FARRELL et al. v. FIRST NAT. BANK OF PHILADELPHIA.

(District Court, E. D. Pennsylvania. February 17, 1920.)

·No. 5132.

1. BANKS AND BANKING ⊚═══148(3)—LIABILITY FOR NEGLIGENT FAILURE TO DISCOVER FORGERY NOT RELIEVED BY DEPOSITOR'S NEGLIGENCE.

A depositor's recovery against a bank for negligently failing to detect a forgery is not precluded by the depositor's failure to examine his bank statement and checks.

2. BANKS AND BANKING ⊚═══148(3)—BANK LIABLE FOR PAYMENTS CONTRARY TO POWER OF ATTORNEY.

Where plaintiff depositor gave defendant bank a power of attorney authorizing an employé of the depositor to draw checks under a specified sum and settle the bank account, held, that the bank's liability for amounts checked out by the employé in excess of the specified amount was not affected by the depositor's failure to examine the monthly bank statements, since the power of attorney notified the bank that the employé would examine the statements.

3. BANKS AND BANKING ⊚═══148(3)—RECOVERY BY DEPOSITOR NOT PRECLUDED BY FAILURE TO EXAMINE ACCOUNTS IN OTHER BANKS.

A depositor's recovery against a bank for making payments contrary to the limitations of a power of attorney held not precluded by the depositor's failure to examine indorsements upon checks and duplicate deposit slips in another bank, which might have led it to discover the unauthorized payments.

4. BANKS AND BANKING ⊚═══148(3)—DEPOSITOR'S NEGLIGENCE MUST DIRECTLY AFFECT BANK TO PRECLUDE RECOVERY.

In a depositor's action against a bank for wrongfully paying out funds, the depositor's negligence is immaterial, unless it directly and proximately affected the bank's performance of its duties.

5. BANKS AND BANKING ⊚═══148(1)—BANK LIABLE FOR UNAUTHORIZED PAYMENTS.

Where defendant bank permitted a defaulting employé of plaintiff depositor to check out funds contrary to the limitations specified in a power of attorney given the bank, the bank was liable for such payments, under the rule that, where one of two innocent parties must suffer for the tortious act of a third, the party giving the aggressor the means of doing the wrongful act must bear the consequences.

6. PAYMENT ⊚═══47(1)—BANK ENTITLED TO ONLY PARTIAL BENEFIT FROM REPAYMENTS MADE BY DEFAULTING EMPLOYÉ OF DEPOSITOR.

In action by a depositor against a bank, which had permitted a defaulting employé of the depositor to withdraw funds contrary to the limitations of a power of attorney, held, that the depositor might apply money repaid to it by the defaulting employé upon other losses caused it by the employé, and need apply only the remaining balance on the bank's debt to it.

⊚═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. PAYMENT ☞47(1)—BANK NOT ENTITLED TO CREDIT FOR REPAYMENTS MADE TO DEPOSITOR BY DEFAULTING EMPLOYÉ.**

In a depositor's action against a bank for permitting a defaulting employé of the depositor to withdraw funds contrary to the limitations of a power of attorney, *held*, that the depositor might recover its entire actual loss from such withdrawals, without crediting the bank with certain sums which the employé repaid to the depositor, to make good other defalcations.

**8. BANKS AND BANKING ☞148(1)—BANK NOT ENTITLED TO CERTAIN CREDITS IN ACTION BY DEPOSITOR.**

In a depositor's action against a bank for permitting a defaulting employé of depositor to withdraw money contrary to the terms of power of attorney, *held*, that the bank was not entitled to claim credit a second time for an item which plaintiff credited to it in its statement of claim, nor another sum which never reached plaintiff.

At Law. Action by J. Walter Farrell, Charles Weil, Sumner S. Weil, and John McKey, trading as Weil, Farrell & Co., against the First National Bank of Philadelphia. Upon rule for judgment for want of a sufficient affidavit of defense. Rule made absolute.

J. Howard Reber, of Philadelphia, Pa., Henry A. Rubino, of New York, N. Y., and George Wharton Pepper, of Philadelphia, Pa., for plaintiffs.

Joseph S. Clark and Owen J. Roberts, both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. From the plaintiffs' statement of claim and the affidavit of defense, the relevant facts for the purposes of this rule may be stated as follows:

The plaintiffs are engaged at Boston in the purchase and sale of commercial paper. The plaintiffs in 1910 opened a Philadelphia office, and placed one M. T. Snyder in charge as their Philadelphia agent for the sale of commercial paper in Philadelphia and vicinity. On March 22, 1910, the plaintiffs opened an account with the Merchants' National Bank of Philadelphia, which was subsequently merged into the First National Bank of Philadelphia, the defendant, and the defendant took over this account. The account was opened and always stood in the name of Weil, Farrell & Co., and when it was opened they filed with the bank a power of attorney which authorized Snyder to draw upon the account, but in no event in excess of $1,000 at any one time, and to manage and make settlement of the account. Snyder continued to make deposits in and draw checks upon the account within the limitations of the power of attorney until the month of April, 1915. On April 25, 1915, the account showed a balance in favor of the plaintiffs of $89.09. The plaintiffs, during the whole period of the transactions in question, had an account with the Girard National Bank of Philadelphia, and up to April 25, 1915, their agent, Snyder, deposited the proceeds of the sales by him of commercial paper in the Girard National Bank; the plaintiffs drawing direct on that account from their Boston office.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Commencing on or about April 26, 1915, and continuing down to May 24, 1917, Snyder deposited in the defendant bank, to the credit of the plaintiffs, checks, duebills, and drafts, the property of the plaintiffs, aggregating $3,182,247.93. He also deposited cash and checks, not the property of the plaintiffs, amounting to $36,767.10, and the defendant credited the plaintiffs with $35,000 derived from the purchase from Snyder by the defendant of commercial paper to that amount on option to return the paper. The defendant, having exercised the option, debited the plaintiffs' account with that amount. The total sum credited to plaintiffs' account from April 26, 1915, to May 24, 1917, was $3,254,015.03. In April, 1915, Snyder had opened a speculative account with F. P. Ristine & Co., a firm of stockbrokers in Philadelphia, and in order to use the plaintiffs' money for that purpose, he deposited the proceeds of many of the notes sold by him with the defendant bank. He withdrew from the defendant bank checks in excess of $1,000, the limitation in the power of attorney, aggregating $3,161,981.64.

Part of the said amount thus drawn out by him was deposited with the Girard National Bank to the plaintiffs' credit and part used for his speculative account. The sales of notes from which the funds used in the speculative account were derived were not reported by Snyder to plaintiffs for a few days, and, in order to cover his transactions, he would take the proceeds derived from later sales of paper and deposit them with the Girard National Bank, and report the deposit as the proceeds of earlier sales of paper. In this way he would always be a few days ahead with the sales of paper, and for these few days would have the use of the money collected. The items deposited with the Girard National Bank did not coincide with the advices Snyder had given the plaintiffs by telegraph of his sales, and, in order to cover up such discrepancies, the plan Snyder carried out was as follows:

He would deposit checks representing the proceeds of later sales, adding a check either on the defendant bank or some other bank, in which he had a private account, to make up the necessary total, and would hand the officer of the bank two deposit slips, one setting out the items deposited and the total and the other setting out merely the total. The latter, purporting to be a duplicate of the former, was stamped and initialed by the receiving teller and handed back to Snyder, who would then enter on it false items representing the sales concerning which he had advised plaintiff, and forward the deposit slip to them along with his report giving the details of each item of sale.

During the whole period from April, 1910, to May 23, 1917, excepting for the first month, the plaintiffs had no knowledge that the account with the defendant bank was being used by Snyder, and regarded it as a dormant and inactive account, but did not so inform the defendant. On the latter date, through a request by letter from the defendant for confirmation of Snyder's action in having paper belonging to the plaintiffs carried by the bank on option, one of the plaintiffs went to Philadelphia and learned of the condition of affairs.

A recapitulation of the figures upon which the plaintiffs' claim is based is as follows:

| | | |
|---|---|---|
| Amount to the credit of account on April 26, 1915.............. $ | | 89.09 |
| Deposits between April 26, 1915, and May 24, 1917, inclusive.... | | 3,254,015.03 |
| | | $3,254,104.12 |

### Withdrawals by Snyder.

| | | |
|---|---|---|
| (a) Checks in excess of $1,000 which reached Weil, Farrell & Co. by deposits in their account in the Girard National Bank.................. | $2,803,052.18 | |
| (b) Checks for less than $1,000 which reached Weil, Farrell & Co. by deposits in their account in the Girard National Bank........ | 27,042.61 | |
| (c) Check to take up duebill for notes purchased by defendant on option to return and option exercised ............................... | 17,500.00 | |
| (d) Checks to take up paper on option to other banks and option exercised................ | 191,938.38 | |
| (e) Checks to take up drafts deposited to plaintiffs' credit in the Girard National Bank.... | 51,741.18 | |
| (f) Checks in amounts not exceeding $1,000...... | 34,304.20 | |
| (g) Check to take up due bill for notes purchased by defendant on option to return and option exercised ............................... | 5,000.00 | |
| (h) Charge against defendant's account upon delivery to the plaintiffs by the defendant of notes aggregating $30,000 sold under option by Snyder to the defendant to take up credit to the plaintiffs in the bank to that amount upon delivery of the said notes to the plaintiffs ..................................... | 30,023.61 | |
| Total ............................. | | 3,160,602.16 |

Which, deducted from the total deposits, leaves a difference of.. $   93,501.96

The difference of $93,501.96 which is the amount for which the plaintiffs sue is made up as follows:

| | |
|---|---|
| Thirty-five checks, each in excess of $1,000, drawn either to Snyder's personal order or to the order of cashier's checks, or New York drafts, or the Pennsylvania Company, all for his personal use .................................................................. | $92,750.00 |
| Balance admitted by the defendant to be on hand May 24, 1917.... | 751.96 |
| Total .................................................................. | $93,501.96 |

The plaintiffs received the benefit of all other items of charge in the above recapitulation, either through deposits in the Girard National Bank or through return of the paper represented by the charges.

The defendant avers in its affidavit of defense that from August, 1912, to May, 1917, monthly statements of account were rendered by the defendant to the plaintiffs and delivered to the plaintiffs' agent, Snyder, under the authority and direction contained in the power of attorney; these monthly statements being accompanied by all the canceled checks of the plaintiffs drawn on and paid by the defendant during the preceding month, including all the checks mentioned in the statement of claim.

It is averred that these statements of account, with the checks and vouchers, did not actually reach the plaintiffs, being held and retained by Snyder in plaintiffs' Philadelphia office, or destroyed by him, but

that the plaintiffs had in law full notice and knowledge of all of the facts shown by the monthly statements of account and canceled checks and vouchers; that plaintiffs, having such notice and knowledge, and failing to object within a reasonable time to the honoring of checks in excess of $1,000, and the charging thereof to plaintiffs' account, acquiesced in the honoring and charging of all of said checks, and waived the limitation in the power of attorney restricting Snyder in the drawing of checks on said account to checks not in excess of $1,000 at any one time; that by virtue of such acquiescence and waiver the power of attorney was in law modified, and of the same force and effect as if no such limitation had been set forth.

It is further averred as a ground of defense that the plaintiffs failed and neglected to fulfill their duty in examining the accounts, canceled checks, and vouchers; that by reason of their neglect to examine the monthly statement the plaintiffs in law acquiesced in the account, waived the limitation of the power of attorney, modified the terms in that respect, and estopped themselves to assert against the defendant the right to repudiate the honoring and charging of checks which were honored subsequent to the rendition of the first monthly account, showing checks honored in excess of $1,000.

The defendant also set up several grounds upon which it is contended the plaintiffs, through their neglect to perform duties imposed upon them by law, failed to acquaint themselves with facts which would have put them upon such notice that Snyder's methods of using the account through which the loss was caused would have been discovered by them.

It is averred that the plaintiffs opened the account as a petty cash account; that, shortly after it was opened, they regarded it as a dormant and inactive account, but never notified the defendant bank to that effect, or closed the account; that the fact that the account was left open made it possible for Snyder to manipulate it for his purposes, resulting in the loss; that Snyder caused to be deposited to the credit of the account every month checks drawn by the plaintiffs to his personal order upon the Girard National Bank, which were in due course returned by the Girard National Bank to the plaintiffs; that as these checks were individually indorsed by Snyder and showed that they were deposited by him and credited by the defendant bank to the plaintiffs' account, plaintiffs were in law informed by this indorsement that Snyder was using the account in the defendant bank, and the plaintiffs made no objection thereto, although they regarded the account as dormant and inactive; that plaintiffs made no examination of any books or papers in Snyder's office from the time he was employed in March, 1910, until the discovery of his speculations in May, 1917; that they did not have any accountant make any investigation or report upon Snyder's business transactions, but relied solely upon the daily letters of advice sent by Snyder to their Boston office, and upon the duplicate deposit slips of the Girard National Bank sent with the daily letters; that the duplicate deposit slips of the Girard National Bank in a great many cases showed that the items of deposit were written over, across, and on top of the stamp of the receiving

teller, and that plaintiffs were negligent in failing to discover that these slips were falsified by reason of these facts; that the plaintiffs were chargeable with notice and were guilty of negligence in failing to discover his peculations.

The above defenses are set up as general defenses to the whole claim and will be considered prior to passing upon the specific defenses as to certain of the items included among the 35 checks, aggregating $92,750, composing most of the balance which the plaintiffs claim is due them.

[1, 2] It is contended by the defendant that, because the monthly statements of account were rendered to Snyder as the plaintiffs' agent, the plaintiffs were chargeable with notice of whatever appeared upon these monthly statements. As has been heretofore stated, upon consideration of that question, my opinion is that that contention is disposed of by the terms of the power of attorney. When the case was before the court upon defendant's motion for a new trial, the plaintiffs' cause of action was in tort, and they claimed damages by reason of the defendant's acts of negligence and omission, and its failure and disregard of its orders and instructions in violation of the limitation set forth in the power of attorney. While the present action is in assumpsit to recover, as a depositor standing in the relation of creditor to the defendant, sums withdrawn upon checks claimed not to be those of the plaintiffs, because in excess of the limitations placed upon Snyder in the power of attorney, the language used in the opinion filed granting a new trial upon the duty of the plaintiffs to examine the monthly statements is equally applicable to the facts upon the present pleadings. It was then held upon that question as follows:

"The position of the court upon the latter question was based upon the terms of the power of attorney of Weil, Farrell & Co. to M. P. Snyder, authorizing him to draw checks against their account in the defendant bank, 'in no event to draw in excess of one thousand dollars at any one time,' giving him full authority to manage and make settlement of the said account, giving him full authority as their general agent in all business with the defendant bank, and authorizing him to do all lawful acts for effecting the premises. The account was opened with the defendant bank, and accepted by it with notice of all the terms of the power of attorney.

"So far as any negligence of the plaintiffs connected with the examination of the monthly statements of account is concerned, the court therefore held that the duty of the depositor to the bank was fixed by the terms of the power of attorney, which constituted the contract between the parties, and the question of negligence upon the part of the plaintiffs in failing to object to the acts of the defendant in honoring checks in excess of $1,000 did not arise; the defendant being estopped by its acceptance of the account with full notice to deny the authority of Snyder to pass upon the correctness of the monthly settlements.

"In the cases cited by the defendant, where the duty was held to be incumbent upon the principal to examine the accounts, and the principal was charged with notice of what appeared therein, and was held negligent if he failed to object to an alleged wrongful payment, the clerk or agent who was performing that duty for the depositor was acting under a delegation of authority of which the bank had no notice, in which it had not acquiesced, and by which it was not bound.

"In the present case, the authority to manage and make settlement of the account was delegated to Snyder, with full knowledge of the bank and with its acquiescence. Hence the court was of the opinion that, as between the bank and depositor, there was no duty to the bank upon the part of the depositor to examine and settle the accounts, except through the attorney in whom the authority was vested through the power of attorney under the terms of which it accepted the account.

"Moreover, the court was of the opinion that there was no presumption or evidence that notice to Snyder was notice to the plaintiffs, since he was the wrongdoer who was committing the fraud upon his principal. The presumption that the agent informed his principal of that which his duty and the interests of his principal required him to communicate does not arise where the agent acts or makes declarations not in execution of any duty that he owes to the principal, nor within any authority possessed by him, but to subserve simply his own personal ends or to commit some fraud against the principal. In such cases the principal is not bound by the acts or declarations of the agent unless it be proved that he had at the time actual notice of them, or having received notice of them, failed to disavow what was assumed to be said and done in his behalf.' See American Surety Co. v. Pauly, 170 U. S., at page 156, 18 Sup. Ct. 563, 42 L. Ed. 987, in which the subject is discussed and the authorities exhaustively reviewed by Mr. Justice Harlan in delivering the opinion of the Supreme Court."

While the Pauly Case did not involve the question of the duty of a depositor to examine his accounts, the excerpt from the opinion of Mr. Justice Harlan is a clear and succinct statement of the lack of presumption of notice to the principal of facts within the knowledge of an agent, who is concealing to his own advantage facts of which the principal would otherwise be presumed to have notice. Where the question has arisen in cases in which an obligation has been placed upon the principal to have the examination of the bank's periodical statements of depositor's account made by some competent person, it has usually arisen where forged checks have been returned with the bank's statements. It may require care and skill upon the part of the bank's officials to detect a forgery, and if it is shown that, in the exercise of care and skill, the forgery could have been discovered by the bank, but that the bank was negligent in failing to exercise such care and skill, then neglect upon the part of the depositor to examine the statement and checks does not preclude the depositor's recovery. Leather Manufacturers' National Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811.

In that case Mr. Justice Harlan said, in discussing forgeries:

"Of course, if the defendant's [bank's] officers, before paying the altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted all examination of his account."

And in discussing limitation upon the authority of an agent he said:

"In Manufacturers' Nat. Bank v. Barnes [65 Ill. 69, 16 Am. Rep. 576] the Supreme Court of Illinois, while expressing its approval of the decision in Weisser v. Denison [10 N. Y. 68, 61 Am. Dec. 731], shows that the bank was itself guilty of negligence in paying checks drawn by the depositor's clerk; for it had in its possession, placed there by the depositor, written evidence that the authority of the clerk to draw checks against the depositor's account was restricted to a designated period, which had expired when the checks there in dispute were paid."

In the present case there was a limitation upon the power of Snyder to draw checks in excess of $1,000, and in this case, as in the case of Manufacturers' National Bank v. Barnes, the bank had in its possession, placed there by the depositor, written evidence of the limitation of authority, and, what is also vitally important, written evidence of the authority of Snyder as the plaintiffs' agent to manage and make settlement of the account. The defendant, therefore, had written notice that the settlement of the account would be passed upon by Snyder, and that Snyder's authority to make settlement which would bind the plaintiffs was necessarily limited to settlement for checks drawn not in excess of $1,000. It had notice, therefore, that the very agent who was authorized to pass upon the settlements was exceeding the terms of his authority. If a bank had knowledge that a depositor's clerk to whom its monthly statements of account were delivered, had forged the depositor's name to the very checks accompanying the statements delivered to him, with the additional knowledge of the bank that he was to pass upon the settlements of the account, would it be relieved from liability to the depositor because the depositor had not personally or through some other clerk or employé examined the statements and the checks?

The present case is as strong against the defendant as though the checks had been known to the bank to be forgeries, and they had delivered the statements and checks to the one known to it to be the wrongdoer, with knowledge that the depositor relied upon him to inform them that the latter were forgeries. When a check of Snyder's in excess of his authority to draw was presented to the bank, with knowledge that Snyder was to pass upon the monthly settlements and knowledge that the check was unauthorized, it was not relieved of responsibility for its own negligence by the failure of the plaintiffs to examine the monthly statements. Through the bank's acceptance of the account under the power of attorney, and in view of the fact that the plaintiffs had no knowledge of what Snyder was doing, the delivery of the monthly statements to the person whom the defendant knew was to make settlement of the accounts cannot be held to constitute notice to the plaintiffs of the facts shown by the monthly statements of account and the canceled checks, nor acquiescence in the honoring and charging of the checks, nor waiver of the limitation of the power of attorney, nor modification of the power of attorney as contended by the defendant, nor was their failure and neglect to examine the accounts, checks, and vouchers such negligence as to constitute acquiescence, waiver, and modification.

The primary and proximate cause of the loss through Snyder's wrongdoing was the failure and neglect of the bank to observe the limitation upon his drawing power. In the present state of the pleadings the fact that the plaintiffs had opened a petty cash account, that shortly after it was opened they regarded it as dormant and inactive, but never notified the defendant bank to that effect, nor closed the account, is not material to the issue. There is no averment in the affidavit of defense that the plaintiffs had instructed Snyder to discontinue the use of the account, nor that they had instructed him

263 F.—50

to deposit his monthly expense checks with any other bank. Therefore, whatever may have been the opinion of the court upon the pleadings and proofs presented upon the former issue of the failure of the plaintiffs to discover the indorsements upon the expense checks, in the present issue, upon the facts set out in the statement of claim and affidavit of defense, the failure of the plaintiffs to examine such checks cannot be held to constitute such negligence as would be the proximate cause of the loss.

[3] The authorities which have been called to my attention sustain the plaintiffs' proposition that, whatever the rule may be as to examination of accounts with the defendant bank, there was no duty cast upon them under the circumstances of this case to examine accounts in other banks. This applies, not only to the indorsements upon the expense checks, but to the examination of the entries upon the duplicate deposit slips in the Girard National Bank. Such inquiry is collateral to the examination of the pass book, the record of checks drawn against the bank account. While there are facts averred which, if they had come to plaintiffs' notice, might have put them upon inquiry, there is nothing set up in the affidavit of defense in relation to the failure of the plaintiffs to pursue the line of inquiry raised by such collateral facts to constitute such negligence upon their part as would relieve the defendant. National Bank of Commerce of Tacoma v. Tacoma Mill Co., 182 Fed. 1, 104 C. C. A. 441.

[4] The negligence of the depositor is immaterial, unless it is of a kind that directly and proximately affects the conduct of the banker in the performance of his duties. Jordan-Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250; Robb v. Pennsylvania Co. for Insurance on Lives and Granting Annuities, 186 Pa. 456, 40 Atl. 969, 41 Atl. 49, 41 L. R. A. 695, 65 Am. St. Rep. 868.

[5] The plaintiffs and the bank were both innocent of any willful wrongdoing, and the rule therefore applies that, when one of two innocent persons has to suffer from the tortious act of a third, he who gives the aggressor the means of doing the wrong act must alone bear the consequences of the act. Robb v. Pennsylvania Co., supra; Bank of Kentucky v. Schuylkill Bank [Pa.] 1 Pars. Sel. Eq. Cas. 248; Pennsylvania Railroad Company's Appeal, 86 Pa. 80; Buckley v. Second National Bank of Jersey City, 35 N. J. Law, 400, 10 Am. Rep. 249.

[6] The defendant sets up defenses as to certain of the 35 checks each in excess of $1,000, aggregating $92,750, upon which plaintiffs' suit is based. They will be taken up in the order in which they are set out in the affidavit of defense.

At the time when the account between plaintiffs and defendant was closed, and Snyder's defalcations were discovered, he withdrew from his account with Ristine & Co. the balance then to his credit, amounting to $1,021.98, and paid it to the plaintiffs, and, on April 19, 1917, Snyder drew against his personal account with the Pennsylvania Company a check in the sum of $2,446.87 and deposited it to the credit of the plaintiffs in the Girard National Bank of Philadelphia. Of the

total of these amounts, $3,468.85, plaintiffs claim to have the right to apply $2,500 in ease of their losses through the frauds of Snyder, which losses exceed the amount sued for to the extent of $2,500. The defendant claims credit for the total amount of $3,468.85.

If Snyder paid to the defendant $3,468.85 out of his own moneys, and not out of the deposits in the defendant bank, the plaintiffs are entitled to appropriate that amount in ease of any losses they may have had through Snyder's embezzlement, whether through checks in excess of or not in excess of $1,000. It appears that the loss of the plaintiffs exceeds the sum claimed from the defendant by $2,500, and the plaintiffs are therefore entitled to appropriate what Snyder repaid them up to $2,500 to their relief for that much of their loss. The difference between $2,500 and $3,468.85, to wit, $968.85, it is admitted, should be deducted from their claim.

[7] The defendant also claims credit as against 3 of the 35 checks aggregating $92,750, as follows: A check paid June 6, 1916, for $2,700 to the Pennsylvania Company, having been deposited to Snyder's personal account with that company on June 5th. On that day Snyder withdrew from his personal account $2,500, which he deposited with Ristine & Co. On June 7th he withdrew from his account with Ristine & Co. $2,700, which on June 7th he deposited in plaintiffs' account with the defendant. Also a check for $2,600, dated June 8, 1916, and paid June 9th to the Pennsylvania Company, and credited to deposit account of Snyder with that company. On or about June 8th, Snyder drew a check on his personal account for $2,500, which he deposited with Ristine & Co. Said check was paid by the Pennsylvania Company on June 9th. On or about June 13, 1916, Snyder withdrew from his account with Ristine & Co. $2,600, which he deposited in plaintiffs' account with defendant bank. Also a check for $3,000, dated June 15, 1916, paid June 16, 1916, to the Pennsylvania Company, and deposited to Snyder's personal account with that company on June 15th. On June 15th Snyder drew a check on his personal account with the Pennsylvania Company for $2,600, which he deposited in his account with Ristine & Co. On or about June 16, 1916, he withdrew from Ristine & Co. $3,000, which on the same day he deposited in plaintiffs' account with the defendant bank.

The defendant claims that the plaintiffs suffered no loss by reason of the honoring of these three checks, and the corresponding charge made by defendant bank against plaintiffs' account, for the reason that credit to the amount of each of the checks was given by the defendant bank to plaintiffs, based upon the said deposits. The relations of the parties may be somewhat clarified if we lay aside for the moment the rather confusing array of figures representing the plaintiffs' account with the defendant, the statements of sums of which the plaintiffs got the benefit, and charges and credits which have no real bearing on the controversy, except to show how the balance is made up.

It therefore may be well to illustrate by reducing the situation to its simplest terms by means of a supposititious case: Suppose Snyder had deposited money to plaintiffs' account with the defendant bank to the extent of $10,000. Against this deposit suppose he had drawn

five checks, of $1,000 each, and two checks, of $2,500 each, exhausting the whole account. Then suppose he had restored to the plaintiffs' account $5,000, representing the sum of the two checks of $2,500 each. Whether Snyder restored the amount of the two unauthorized checks of $2,500 each or not, the defendant bank would owe the plaintiff $5,000, and the deposit account should show a balance to their credit of $5,000. This $5,000 would not be owing to the plaintiffs because of the withdrawal of two checks for $2,500 each without authority, but because the amount thereof had been deposited to plaintiffs' credit which amount the defendant was under obligation to its creditor to return. The fact, therefore, that the balance was produced by original deposits aggregating $10,000 against which authorized checks to the amount of $5,000 were drawn and unauthorized checks to the amount of $5,000 were drawn, exhausting the account and then a deposit of $5,000 constituting a so-called restoration was made would not relieve the bank from liability to pay the depositor the balance of $5,000 which should be standing to his credit. It would be concealing the liability of the debtor to the creditor by mere playing with figures to say that, inasmuch as he had suffered no loss from the honoring of the unauthorized checks, because the amount was put back into the bank, he was not entitled to recover the $5,000 which should be remaining in the bank to his credit.

The plaintiffs are suing, and are entitled to recover, as a creditor of the bank a balance which they deposited, and which they claim should be in the bank and which the bank has paid out upon checks which are not the checks of the plaintiffs, because they are contrary to the authority given to the bank for honoring checks. They are not suing to recover anything beyond their whole loss, and so far as their loss is caused by honoring unauthorized checks they are entitled to recover up to that amount.

The defense based upon the transactions in relation to the three checks, aggregating $8,300, is not, in my opinion, sustainable. Shipman v. Bank, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821. Neither is the defense good as to the deposits for which the defendant claims credit, aggregating $35,385.06 of cash and checks which were not plaintiffs', but Snyder's, money.

[8] The plaintiffs in their statement of claim have given the defendant credit for $22,942.53 of that amount included in the aggregate of $2,803,052.18, composing sums deposited in the plaintiffs' account in the Girard National Bank, and the balance of $12,442.53 is represented by checks in excess of $1,000 included in the $92,750 of such checks which never reached the plaintiffs, and that seems to end any controversy. Otherwise the defendant would get credit twice for the $22,942.53, and as to the $12,442.53 if it went back to the bank, it should be there now.

On the whole, the defenses as to specific items, with the exception of the item of $968.85, in my opinion leave out of consideration the basis of the present suit, which is in assumpsit upon the implied promise of the defendant to pay to the plaintiffs the balance of its deposit without that balance being diminished through the charge against the

plaintiffs of unauthorized checks, but only to the full extent of the plaintiffs' actual loss. Bank v. Risley, 111 U. S. 125, 4 Sup. Ct. 322, 28 L. Ed. 374. Under the facts set out in the statement and affidavit of defense,

The actual loss is shown to be the sum of...................... $93,501.96
Less balance of amounts repaid by Snyder...................... 968.85

Leaving a balance due the plaintiffs of...................... $92,533.11

The rule is made absolute for the said sum of $92,533.11, with interest from October 15, 1919.