## Williams's Appeal.   Moore's Estate.

*Validity of judgment given by husband to wife to secure her separate estate.*

| 47 | 307 |
| 174 | 410 |

| 47 | 307 |
| 207 | 312 |

| 47 | 307 |
| f 36 SC | 507 |

A judgment admitted to be unobjectionable in point of honesty, given by a husband to his wife to secure her separate estate in a question of distribution, will not be treated as void in law or equity because of the legal unity of the parties. The relation not appearing in the record, the court will not at the instance of creditors inquire into the fact of coverture, when no fraud is alleged.

APPEAL from the Common Pleas of *Chester county.*

This was an appeal by Richard Williams *et al.* from the decree of the court, distributing the proceeds of the sheriff's sale of the real estate of Jesse Moore.

The case was this:—

On the 17th of July 1862, by virtue of a writ of *venditioni exponas*, issued out of the Court of Common Pleas of Chester county, the sheriff of said county sold a farm and mill property belonging to Jesse Moore, out of the proceeds of which some undisputed liens against the said real estate were satisfied, and the balance, amounting to $1691.75, paid into court, and an auditor appointed to report distribution to and among the persons legally entitled thereto.

The following judgments, entered in the Common Pleas of Chester county, were claimed to be liens on the real estate sold, to wit:

Hannah Moore  �️  May 10th, A. D. 1854, judgment entered on
     *v.*      ⎬  bond and warrant of attorney, to confess judg-
Jesse Moore.   ⎭  ment, dated April 8th, A. D. 1854, for $600.

Judgment revived by amicable *scire-facias*, signed by the parties October 26th 1858.

[Williams's Appeal. Moore's Estate.]

John O'Niell ⎱ Judgment on promissory note with warrant, &c.,
      *v.*    ⎰ dated November 23d 1859, for $600, four months
Jesse Moore. ⎰ after date.

Ruth Ann Moore ⎱ Judgment on bond, &c., dated March 28th
      *v.*      ⎰ 1861, conditioned for $2541 in one year,
Jesse Moore.    ⎰ with five per cent. interest.

Martha M. Williams ⎱ April 3d 1861. Judgment on bond, &c.,
      *v.*          ⎰ dated March 28th 1861, conditioned for
Jesse Moore.        ⎰ $1571 with interest.

The fund in court was sufficient to pay the claim of Hannah Moore and John O'Niell in full, and something on account of the claims of Ruth Ann Moore and Martha M. Williams.

There were other liens subsequently entered against Jesse Moore, which could not be reached in the distribution, the estate being insolvent.

Hannah Moore, the plaintiff in the first-named judgment, was the wife of Jesse Moore the defendant. They were married in the spring of 1850, and lived together as man and wife from that period to the present.

Washington Townsend, Esq., who was appointed to make distribution of the fund in court, made his report, allowing the claim of Hannah Moore of $600, without interest, to which Richard Williams and Martha M. his wife, and Ruth Ann Moore filed the following exceptions:—

1. The auditor erred in allowing in the distribution the alleged judgment of Hannah Moore *v.* Jesse Moore, the same being absolutely void, and therefore no lien on the land.

2. In deciding that in order to disallow said alleged judgment, it was necessary to reverse the same, whereas being void it should have been treated as a nullity.

These exceptions were overruled by the court below, whereupon the appellants appealed to this court.

The judgment of John O'Niell having been paid and satisfied since the auditor's report, the balance for distribution was now claimed by the above-named appellants.

*R. E. Monaghan* and *P. F. Smith*, for appellants.

*W. Darlington*, for appellees.

AGNEW, J.—Here is a judgment, admitted to be unobjectionable in point of honesty, given by a husband to secure his wife's separate estate. We are asked, in a question of mere distribution, to pronounce it void, upon the legal fiction that they are one person in law. The proposition is shocking to any but the mind of a black-letter lawyer, and is to be denied if it can be resisted, upon any proper legal principle. Unless we must, why should we go back to a period when legal logic, like that of the schools,

was so metaphysical that rights were subservient to technicality, and substance to form?  We should rather keep pace, if we can, with the progress of custom and legislation.  Centuries were consumed in the slow process of legal parturition, giving birth to the benign features of the Act of 1848, securing the separate estate of married women.

In the mean time, custom had been slowly creating departures from the rigid theory of legal unity, which the common heart of mankind felt must be done to preserve the rights of that unprotected portion from the most shocking violation.  Therefore, upon the plea of equity (which really is nothing more than judge made law to prevent injustice by the operation of rigid common law), the courts set aside legal unity wherever, by its rank injury, it became legal folly.  Long since, deeds, bonds, agreements, contracts, gifts and loans, between husband and wife have been supported without the intervention of a trustee; the only mode possible to the comprehension of the stern theorizing common law lawyer.  The legal unity was always so near to his eyes, that although microscopic in its littleness, it shut out from his vision the larger, though distant fact, that in nature, right, and solid justice they were two human beings whom the law for some purposes should regard in a duplex, instead of a single relation.  Yet even the technologist could see, where different rights vest in the same person, that legal alchemy would transmute them to effect justice by creating a payment when the hand to receive was the one to pay.  The same rigid disciplinarian could also perceive how equity could consider that done which ought to be, when no legal remedy existed.  Indeed, the common law itself discovered sufficient liberality to adopt as a maxim, *cessante ratione cessat et ipse lex.*  Legal unity, therefore, was not permitted to shelter the husband violating the sanctity of his wife's person, from her complaint or her testimony.

A strong illustration may also be drawn from analogy, where other common law fictions have given place to sound reason and a better morality; and in no instance is this more evident than in the case of corporations.  Long did the quaint aphorism that a corporation has no soul, lord it over the intellects and common sense of men.  Legal and moral responsibility could scarcely be imputed to persons under the shield of a corporate existence.  But under the reign of intelligent justice they have been made liable for negligence of servants, assault, false imprisonment, nonfeasance, misfeasance, and malice; could libel and be libelled, and might be indicted.

So in relation to legal unity, we witness the following departures:  A wife may acquire separate property in equity, by agreement with her husband, without the intervention of a trustee: McKennan *v.* Phillips, 6 Wharton 571 ; Fisher *v.* Filbert, 6 Barr 66; Kutz's Appeal, 4 Wright 94.

A post-nuptial contract and settlement by a husband upon the wife, held good: Duffy *v.* Insurance Co., 8 W. & S. 414; Lehr *v.* Beaver, Id. 106. Agreement for a separation between them, good, without a trustee: Hutton *v.* Hutton, 3 Barr 100. A wife may lend money to her husband, and take his note: Kutz's Appeal, 4 Wright 90; Towers *v.* Hagner, 3 Whart. 48; Gochenaur's Estate, 11 Harris 461. A gift of coin from husband to wife good: Herr's Appeal, 5 W. & S. 494; Rogers *v.* Fales, 5 Barr 154.

These woofs have all been woven by the judicial mind into the warp of the common law, and have become established customs of the state, finding their fruit in actual legislation. When the Act of 1848 declared that all the property of a married woman shall be owned, used, and enjoyed by her as her separate property, and shall not be subject to levy or execution for her husband's debts, or transferred or encumbered by him, without her assent in due form of law, it established a principle of separation or dissolution of the legal unity so far as it became necessary to protect these rights of property. What difficulty is there in saying that an instrument which is the mere representative of these rights is within the equity, and consequently the protection of the statute? It was good before in equity. Have we not held a matter to be within the spirit, and therefore within the intention of the law? Why should we refuse to support the judgment of the law upon the instrument, in order to preserve the very rights which advancing legislation has now secured to the wife? If the husband have come into the possession of the wife's estate in money, or by conversion, is it not in effect encumbered and levied in execution for the husband's debts if we permit his property to be swept away by subsequent judgments, on the ground that a judgment given by him to protect her is void by reason of an artificial unity? Unquestionably the debt is the principal, while the judgment is but the shell, the chrysalis from which her right must emerge. Then, when legislation has established the right itself by extirpation of the legal unity to that extent, certainly the courts should not lag behind, and, returning to black-letter law, frustrate the beneficent intent of the statute by striking down the instrument which protects the estate. The case might be rested here, but let us see whether we cannot find strictly legal principles to shelter the rights thus secured by statute and custom.

A deed to a married woman is good at common law, to vest the estate in her if her husband do not dissent: Coke Litt. 3 a; 1 Comyns's Dig. 566, *Baron and Feme*, p. 2; Smith *v.* Baxter, 6 Binn. 427; but a bond *from* her is void, and the judgment upon it: Dorrance *v.* Scott, 3 Whart. 309.

A judgment is the act of the court, the sentence of the law upon the facts before the court. This principle is applied to

judgment by confession upon warrant of attorney : Hazelett *v.*
Ford, 10 Watts 101 ; McVeagh *v.* Little, 7 Barr 279.   By the Act
of 1806, the prothonotary is required, when a bond or writing
containing a warrant of attorney to confess judgment is presented,
" to enter judgment against the person or persons who executed
the same."   A judgment cannot be inquired into collaterally in
a question of distribution, but if a party will attack it, he must
have the proceedings suspended until he can test its validity :
Dyott's Estate, 2 W. & S. 557 ; Wheaton's Estate, 4 Watts 345 ;
Leeds *v.* Bender, 6 W. & S. 315 ; Harris's Appeal, 5 Id. 473.

In this case, then, we have a judgment, regular on its face—
a bond filed, judgment entered, a revival and confession of judg-
ment.   Moore, the defendant, was *sui juris*, and capable of giving
it ; while the marriage is a fact *dehors* the record.

Then, what is there in the application of a third person to
invoke the legal discretion of the court to inquire into the validity
of the judgment ?   If marriage is suggested, there being no
fraud alleged, the answer is, the law protects her estate, and
equity sustains the instrument which represents it ; and why
should the court lend its aid to overturn the judgment ?

But to exclude inferences which might be drawn from the
general language of this opinion, not warranted by the decision,
it is necessary to say that neither the judicial nor the legislative
mind has been directed to unfettering the wife from coverture in
its legal effects.   The single thought is, that, her estate being
saved to her by the law, it is the business of the judiciary to
preserve it, instead of resorting to the technical unity produced
by marriage to destroy it, where the interests of justice do not
demand it.

The Act of 1848 has invaded the marital unity in this respect ;
it preserves to the wife all her chattels, real and personal, and
choses in action, which marriage, by the common law, gives
to the husband ; to the same extent her rights should be pro-
tected.

This being so, the argument summed up is, the estate being
preserved by law, the bond which represents it being good in
equity, the judgment regular on its face, the distribution to be
made " according to law and equity," the validity of the judg-
ment not being inquirable into before the auditor, law and equity
require that the judgment should participate in the fund.   That
as the judgment can only be set aside by an application to the
equitable power of the court, which involves the exercise of a
legal discretion, the court, in order to protect the estate of the
wife, preserved by the Act of 1848, ought not to inquire into the
fact of marriage between the plaintiff and defendant, merely
upon the suggestion of a technical unity, where no fraud is
alleged.   The opposite argument asserts that a judgment is a

thing existing only in law and not in equity, and therefore a judgment of the wife is void, because there is no party plaintiff in law; for the legal unity merging the wife's existence in that of the husband, leaves the record with but one party, to wit, the husband, defendant. But the argument begs the question by assuming the marriage. *Non constat* by the record, that there is a marriage. Then comes the pith of the matter, that, law and equity protecting the estate represented in the judgment, we will not lend the power of the court to inquire into the fact of marriage, and thus destroy the fruits of the judgment in the absence of fraud, while the wife is in the act of extending her hand to receive the fund from the court. Nor is this a step in advance; it only follows: the great stride was that which preserved the estate at law, and protected the instrument representing it in equity. Nor will the maintenance of the judgment open a wider door to frauds than the legislature has already set ajar. The same principles precisely will control the judgment which govern the estate, and that is where *fraud* is alleged, the burthen of proof lies on her to show the soundness of the debt by showing the separate estate upon which it is founded. Fraud being alleged, and marriage proven, her coverture then is properly invoked to compel her to prove out her case.

It is objected that execution cannot issue upon such a judgment. But this is because the process of execution is adversary, and the policy of the law forbids any disturbance of the domestic relations of the parties. It does not follow that the voluntary act of the husband in her favour, and for the protection of her estate, should be treated as a nullity.

> The decree of the court below ordering distribution to be made to the judgment of Hannah Moore is therefore confirmed, and the record ordered to be remitted for the purpose of making distribution accordingly, and the appeals of Richard Williams and wife and Ruth Ann Moore are ordered to be dismissed with costs.

Concurring opinion by

WOODWARD, C. J.—The auditor was of opinion that he had no right to inquire into the validity or legal effect of the judgment of Mrs. Moore against her husband, and as it had not been directly assailed in the court under whose appointment he was acting, he conceived that his powers over it were limited to the inquiry, whether it had been paid. In this he was probably right. Strictly speaking, an auditor appointed to distribute moneys among lien-creditors has no power to try the validity of judgments. That is usually done by an issue in court framed to meet the question intended to be raised, and I am willing to

think that this would have been the proper course here, and therefore I concur in affirming the auditor's report.

But in affirming his report, the court below and this court have entered into the general question of the validity of such liens as this judgment is supposed to constitute, and have advanced views which, I fear, will make this case a bad precedent.

That deeds, contracts, settlements, and gifts by a husband in favour of his wife, though void at law, may be supported in equity, with or without the intervention of a trustee, is an old and familiar doctrine which I am not about to question. A full and satisfactory statement of it, with the authorities to support it, may be seen in Judge Pierson's opinion, in the distribution of the proceeds of Samuel Shode's land, reported in 8 Am. Law Reg. 754. I admit that equity would in a proper case support a judgment confessed by husband to wife; that it might be used to secure to her a support out of his estate, and that, after his death, payment of it would be decreed as against heirs and legatees. For purposes like these equity would enforce such a judgment, on the same principle on which it would support a deed or other contract in behalf of the wife.

But it is arguing from a false analogy when that equitable doctrine is applied to a case which stands as this case does, and as all distributions of proceeds of sheriff's sales must stand, upon *purely statutory liens*. The policy of our law is opposed to equitable liens, and it was to exclude them that our statutes provided records on which creditors should spread out their liens for the notice of the world. It is among creditors, whose liens appear of record as the statutes prescribe, that proceeds of sheriff's sales are distributed. Unless a creditor has a lien *at law*, he has no place in such distributions. Now, a judgment is not necessarily a lien upon the defendant's lands. It is a statute which gives it this attribute. But there is no statute which has ever authorized a husband to encumber his lands with liens confessed to his wife. The Married Woman's Act of 1848 contains no such grant. The common law absolutely forbids it, for at common law husband and wife are one person, and a man can no more make liens on his land by confessing judgment to his wife, than by confessing judgment to himself. Whence then came Mrs. Moore's right to share in this distribution, to the prejudice of creditors whose liens are recognised by law? It is attempted to be derived from no other source than the equitable doctrine above alluded to.

If the doctrine were applied to support the judgment *for purposes of equity* it would not be illogical, but I submit that it is greatly misapplied when it is used to support the judgment as a *lien*, entitled to share in a distribution purely legal. In the opinion

of Judge Pierson, above referred to, it is admitted that a judgment by husband to wife is void at law, and, in this present case it is agreed, that execution will not lie upon such a judgment. How is a judgment, void at law and which the law will not execute, to be admitted to a distribution of proceeds of a sheriff's sale ?   The distribution is a proceeding at law,—is a statutory proceeding.   May it be controlled by that which is void at law? What principle of equity is it which will thus override the law, when law is doing its own appropriate and exclusive work ?   I conceive there is none.   That which is invoked is not properly applied to such a case.   And it is a dangerous misapplication of equitable principles, for husbands are too much inclined, at all times, to use their wives to cloak their property from creditors, and if they are taught that it may be done by the easy device of judgments, every dishonest debtor will have a judgment-creditor in his wife.

This particular case is free from all reproach in this respect; but, not to make it an evil example, it should be left as a judgment betwixt the husband and wife, without being recognised as a lien against creditors.

THOMPSON, J., was absent at the argument of this cause.