Ray's Estate.

422

Argued May 27, 1931. Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*Spencer G. Nauman,* of *Nauman & Smith,* for appellant.—The copy of the alleged separation agreement was not admissible in evidence: Strause v. Braunreuter, 14 Pa. Superior Ct. 125; Cottom v. Wiley, 39 Pa. Superior Ct. 507; Carland & Bierne v. Cunningham, 37 Pa. 228; Milliken v. Barr, 7 Pa. 23; Moore v. Everitt, 20 Pa. Superior Ct. 13; Buehler v. Fashion Plate Co., 269 Pa. 428.

The separation agreement was abrogated by the subsequent reconciliation of the parties: Henkel's Est., 59 Pa. Superior Ct. 633; Penn v. Preston, 2 Rawle 13.

The language of the separation agreement construed in the light of the attending circumstances shows that it was only intended to take effect whilst the separation lasted.

The widow was a competent witness under the provisions of the Act of June 11, 1891, P. L. 287: Proper v. Campbell, 15 Pa. Superior Ct. 153; Aaron v. Smith, 90 Pa. Superior Ct. 565.

*Paul G. Smith,* for appellee.—The "separation agreement" was properly before the court: Edwards v. Tracey, 62 Pa. 374; Reed, Crane & Co. v. Kremer & Co., 111 Pa. 482; Greenawalt v. McEnelley, 85 Pa. 352; Warren, etc., Trust Co. v. Foley, 294 Pa. 176; Fisher v. King, 153 Pa. 3; Bauer v. Hill, 267 Pa. 559; Shapiro v. Melarkey, 278 Pa. 78; Graff v. R. R., 31 Pa. 489; Strause v. Braunreuter, 14 Pa. Superior Ct. 125.

The deed in question was a postnuptial settlement of property rights and in full force and effect on the death of the husband: Miller v. Miller, 284 Pa. 414; Fennell's Est., 207 Pa. 309; Dillinger's App., 35 Pa. 357; Scott's Est., 147 Pa. 102; Singer's Est., 233 Pa. 55; Haendler's Est., 81 Pa. Superior Ct. 168.

There was no competent evidence of an intentional cancellation of the "separation agreement": Cooke v. Doron, 215 Pa. 393; Munson v. Crookston, 219 Pa. 419; Phillips's Est., 271 Pa. 129; Bowman's Est., 301 Pa. 337.

OPINION BY MR. JUSTICE MAXEY, June 27, 1931:

This is an appeal from an order of the court below dismissing exceptions to an auditor's report striking off a widow's election to take against the will of her husband, W. S. Ray, who died leaving an estate of $127,-732.79. There were four exceptions. The first three

were not pressed, and the fourth relates to the basic question in the case. It excepts to this finding of fact: "The 'Separation Agreement' was in no manner dependent upon the continuance of the separation." The separation agreement referred to was entered into by the husband and wife on the 29th day of September, 1928, while they were estranged and living apart. In this agreement the wife accepted the terms of an irrevocable trust, in which the husband set apart eighty-five thousand dollars chiefly for the benefit of herself and daughter, in complete release of all claims against the husband as though the marriage relation had never existed. One week later the parties resumed cohabitation and occupied the same apartment until May, 1929. The monthly income under the trust agreement continued though for four months Ray contributed to the maintenance of his wife and their daughter. The wife claims that this reconciliation legally abrogated the agreement and restored her statutory rights in the estate of her husband. The court below negatived this claim.

W. S. Ray was married twice. He had three children by his first wife and one child, Virginia Ray, by his second wife. Ray died, testate, on July 18, 1929, leaving to survive him the second wife and his four children. His widow elected to take against his will. A testamentary trustee under the will, acting for the three children of Ray's first wife, filed a petition to strike off the widow's election to take against the will. An answer was filed by the widow. She also filed an inventory and appraisement in the office of the register of wills. Exceptions were filed to this by the testamentary trustee and by the three children of the first wife who were named as beneficiaries under the trust created in his will. The same issue was presented by these exceptions as by the answer filed to the petition to strike off the widow's election. This issue was referred to an auditor, who after hearing made findings of fact and reported that the separation agreement was in

full force and effect at the time of Ray's death and that the widow was precluded by that agreement from taking against the will and codicil of her husband and that she was not therefore entitled to any part of the balance of the account in the Mechanics Trust Company, executor of the will of W. S. Ray, deceased, and her claim of one-third of the balance in the account was disallowed. The court below confirmed the report of the auditor.

The fundamental question in this case is whether the agreement between the husband and wife of September 29, 1928, was a postnuptial final and definite settlement of their respective rights in Ray's property or merely a separation agreement which would ipso facto terminate by the subsequent reconciliation of the parties. The agreement is captioned "Separation Agreement," though it declares that Ray and his wife were already "living separate and apart from each other; and it is the desire of both parties to finally and for all time settle and determine their property rights, or rights of support and maintenance, of the party of the second part [the wife] by the party of the first part [the husband], all dower rights or rights in lieu thereof, together with any and all other existing rights between the said parties, growing out of the marriage relation." The agreement further provides that the husband should pay to the Mechanics Trust Company, Trustee, prior to the execution and delivery of the agreement, the sum of eighty-five thousand dollars in cash, to be held by said company under deed of trust for the use and benefit of the wife and her daughter, Virginia Ray. This provision in the agreement was fully executed. The agreement further provides that the wife, in consideration of the payment of said sum of money, "accepts the terms of the said trust agreement, in full and complete settlement and release of all claims and demands of every kind or nature, against the husband, including all liability now or at any time hereafter existing or accruing, either on account of support, maintenance, alimony,

temporary or permanent, dower or rights in lieu thereof, incident to the marriage relation, intending thereby to relieve the husband entirely from all personal claims and demands, and from any that may hereafter attach, arising in any manner from the relation of husband and wife, and from all claims or interest whatsoever in any property, real, personal or mixed, which the said husband may now own or may at any time hereafter hold or acquire any interest whatsoever in, either by devise, bequest, purchase or otherwise; it being understood that this settlement is a total and complete release of the said husband by the wife, of all matters and charges whatsoever, and that the said wife shall, after this settlement, require nothing whatever of the said husband, as though the marriage relation had never existed between them." The reading of this agreement and the fact that the husband paid the eighty-five thousand dollars therein stipulated to be paid lead to but one conclusion, viz., that the agreement accomplishes its avowed purpose "to finally and for all time settle and determine their property rights" in the personal property the title to which was held by Ray. This agreement cannot be construed as anything other than a postnuptial settlement of property rights between the husband and wife. A separation agreement ordinarily provides for a separation and for the wife's support during the separation. Its provisions are usually executory in character. The subsequent cohabitation of the parties is evidence of an intention to abandon the agreement. As the auditor well said: "It is not subsequent cohabitation alone which avoids such agreements, but the intentional renunciation of them, which the resumption of marital relations sometimes evidences. So far as subsequent cohabitation establishes such an intention and so far only does it have the effect of avoiding the contract. Whether it does so properly is a matter of intention to be ascertained from the conduct and circumstances as a question of fact: Daniels v. Benedict, 38 C. C. A. 592,

97 Fed. 367; Dennis v. Perkins, 88 Pac. 165." The reconciliation of the parties and their living together as husband and wife subsequent to a mere separation agreement make the inference of intention to renounce the agreement of separation inevitable, for their action then becomes inconsistent with it.

Henkel's Est., 59 Pa. Superior Ct. 633, held that a reconciliation between a husband and wife abrogates the covenants of an agreement of separation so far as the agreement is not executed unless there is an agreement that it shall not be abrogated, and that if the covenants releasing the interest of each in the estate of the other are executory so that effect cannot be given to them until the death of either the husband or wife, a reconciliation before such death occurs restores to the parties their marital rights in the estate of which either dies possessed.

30 Corpus Juris, 1058, Sec. 833, sets forth: "A distinction exists between a simple separation agreement containing executory provisions only and a separation settlement making a division and allotment of property and property interests between the parties. The question whether a deed is a separation deed or a postnuptial settlement depends on the intention of the parties to be gathered from the terms of the deed." That the parties intended the agreement of September 29, 1928, as a postnuptial settlement is evidenced by the following:

First, the declaration in the preamble of the agreement that both parties desired the settlement and determination of their respective property rights finally and for all time.

Second, the substantial sum of eighty-five thousand dollars which the husband agreed to set apart and did set apart for the benefit of his wife and daughter, Virginia, and the latter's issue. This was a setting apart during Ray's lifetime of a fair and just proportion of his property for the benefit of those who would have a legal

and moral claim to a substantial share of his property after his death.

Third, the statement that the agreement of trust (which was begotten by the basic agreement) was "irrevocable." When husband and wife become estranged and dwell apart or agree to dwell apart, they do so with the knowledge that often these estrangements end and marital relations are resumed. If Ray and wife had intended that this possible, and, as the event proved in this case, highly probable, resumption of cohabitation would ipso facto terminate the agreement they entered into, it is not likely that Ray would have provided in this agreement for the creation of a trust explicitly declared to be irrevocable.

Fourth, the fact that the husband completely executed his part of the agreement at once and that even after the parties resumed cohabitation and the husband began again providing for his wife's support and maintenance from month to month she continued to receive monthly the income provided for in the trust agreement. This was an explicit recognition on her part that the agreement was in force after the resumption of cohabitation and was, as it purported to be, a determination of their respective property rights for all time.

Fifth, in the codicil which Ray executed on the same day as the agreement he declared that, having made independent provision for his wife and daughter, Virginia, by establishing a trust fund, he annulled and cancelled every provision contained in his last will and testament for their benefit and excluded them from the last will and testament, and that where the will called for four children it should be read as three, etc. As this testamentary paper legally speaks as of the date of testator's death, it follows that Ray himself from September 29, 1928, until the day of his death regarded the agreement as a postnuptial property settlement, and not as a mere separation agreement to be terminated by the resumption of cohabitation with his wife.

There is no question of the right of Ray and wife to enter into the agreement in question. The language used by this court in Fennell's Est., 207 Pa. 309, 311, is appropriate to this case: "The agreement into which the wife entered was entirely free from fraud, concealment or overreaching......The agreement was not only fair and conscionable but decidedly to her advantage. After the death of her husband, she attempted to repudiate the agreement into which she had entered......We have then the single question whether a postnuptial agreement reasonable in its terms, entered into with a full knowledge of the facts and for an adequate consideration, by which a wife releases her inchoate right of dower is binding upon her......If this agreement had been made in the contemplation of an actual and immediate separation even before the Act of 1893, there could be no doubt of its validity: Dillinger's App., 35 Pa. 357; Hintner's App., 54 Pa. 110; Commonwealth v. Richards, 131 Pa. 209; Scott's Est., 147 Pa. 102. While the common law disability of a married woman remained, except as modified by statute her contracts when unobjectionable might be enforced through the medium of equity. Equity for some purposes regarded husband and wife as distinct persons, capable of contracting with each other, notwithstanding their legal unity: Williams's App., 47 Pa. 307......If there was any doubt before on this subject, it was settled by the Act of June 8, 1893, which gives to a married woman the same right and power that any other person has to acquire, possess, control and dispose of any kind of property in possession or expectancy, and to make any contracts that may be necessary, appropriate or advantageous to the exercise and enjoyment of the rights and powers granted, excepting only certain contracts named." See also Singer's Est., 233 Pa. 55; and Scott's Est., 147 Pa. 102. In the case before us there is no intimation that any fraud was practiced upon the wife or that the slightest advantage was taken of her. Both

she and her husband were represented by competent and vigilant counsel. The covenants of the agreement were presumably for the mutual benefit of both parties. The engagements were reciprocal. The husband carried out his part of the agreement to the letter, and his wife thereby acquired a substantial interest in a trust fund of eighty-five thousand dollars created out of her husband's estate. To permit her to continue in the enjoyment and possession of her valuable rights in this trust fund and at the same time to repudiate utterly her reciprocal engagements in the contract is offensive to equity and good conscience. By the terms of her own deliberate and express covenants she is precluded from doing the things she is attempting to do, to wit, to retain her substantial interest in an eighty-five thousand dollar trust fund and at the same time to secure the same share of her husband's property (one-third) which the law would have given her if the postnuptial settlement of 1928 had not been entered into. It is true that the estate, a one-third interest in which she is laying claim to, has been reduced by the eighty-five thousand dollars put into the trust fund. This fact does not save her claim from being an inequitable one. She demands not only the retention of her valuable rights in the eighty-five thousand dollar trust fund, but demands also the one-third interest in the estate inventoried at $127,-732.79. This would leave to Ray's three children by his first wife the balance of only $85,155.20, or $28,385.06 each, whereas Mrs. Ray and her daughter and the latter's issue would have the beneficial enjoyment of $85,-000, and Mrs. Ray would also have set apart to her absolutely, $42,577.60. The claim of the appellant is an example of an attempt to enjoy benefits while repudiating the burdens expressly assumed in order to obtain them. This claim must be denied.

The fifth and sixth assignments of error which relate to the dismissal of the exceptions to the findings of fact by the auditor to the effect that the separation agree-

ment was in no manner dependent upon the continuance of the separation and was not cancelled or abrogated by the parties and was in full force and effect at the time of the death of the decedent, are overruled.

The admission in evidence by the auditor of a copy of the "Settlement Agreement" is the subject of the seventh assignment of error. The execution of the settlement agreement was admitted. E. B. Taylor, president of the Mechanics Trust Company, testified that copies of this agreement in duplicate were executed and one of them delivered to Ray and the other retained by Mrs. Ray's counsel, who had prepared them, and that after Ray's death the witness had his company's employees search for one of the original copies, but without success. He produced a copy later properly identified (not the original, however) which he obtained in May or June, 1929, from the office of Mrs. Ray's attorney. The auditor held that sufficient ground had been laid for the introduction of this secondary evidence. This ruling was correct. "The essential principle of preferred evidence is that it is to be procured and offered if it can be had......If it is not available, then it is not insisted upon": Wigmore on Evidence, 2d ed., vol. 2, sec. 1192. "When the higher proof is lost, or unattainable, the best attainable may be given": 2 Encyc. of Evidence, 308. "The party offering such [secondary] proof must first establish the existence of the original writing as a genuine instrument": Ibid. 309. "Proof of the loss so fully as to exclude every hypothesis of the existence of the original is not required. It is not necessary to prove exhaustively that the paper nowhere exists": Ibid. 331. "It [the best evidence rule] only demands that a moral certainty should exist that the court has had every opportunity for examining and deciding the cause upon the best evidence within the power or ability of the litigant to produce": United States v. Sutter, 21 How. (U. S.) 170. In Gorgas v. Hertz, 150 Pa. 538, 540, this court said: "When it appears that the judge,

who presided at the trial of the case, was satisfied that a paper was not procured only because it could not be found after faithful search, this court will, as a general rule, accept it as an established fact."

The respondent further attempted to exclude this paper on the ground, as she set forth in her answer, that she and her husband before his death "repudiated, cancelled and rescinded the agreement of separation, and continued to live as man and wife until shortly before his death." Testimony in support of this was offered by the respondent and received under objection. She testified that on June 5, 1929, E. B. Taylor, president of the Trust Company, had shown her a copy of the separation agreement which he wanted her to sign, that he asked her what had become of the separation agreement, that she told him it had been destroyed, that her attorneys had told her to destroy it when Mr. Ray had come back to live with her as his wife, that this paper was not in existence and Mr. Ray agreed that to destroy it was the thing to do, and that he gave her his copy and both were destroyed. This alleged conversation took place one month and thirteen days before Mr. Ray's death. Mr. Taylor on cross-examination admitted that he had asked for a copy of the separation agreement before Mr. Ray's death, at the request of Mr. Ray's children, Mrs. Mary E. Ray Bartemeier and Miss Dorothy E. Ray, who said that their father was worried because he did not have a copy of the agreement. Taylor denied that he had been informed by Mrs. Ray that the agreement had been destroyed, but he admitted that she declined to reëxecute this copy of the agreement, with the statement that she would want a lot more money than when she first executed it. The petitioner claims that Mrs. Ray's testimony was incompetent under section 5, clause (e), of the Act of May 23, 1887, P. L. 158, which makes incompetent as a witness the surviving party to a thing or contract in action when the other party to it is dead. The auditor correctly held that under this act

"the widow was not competent to testify directly to matters occurring between herself and her husband. She claims by devolution (Cooke v. Doron, 215 Pa. 393) while the children of decedent claim under the will, which is by purchase (Munson v. Crookston, 219 Pa. 419) and therefore she does not come within the exception applying to controversies between parties who claim by devolution on the death of the owner of property (Phillips's Est., 271 Pa. 129; Schreckengost's Est., 77 Pa. Superior Ct. 235)."

We are clear that the answers of Mr. Taylor to the questions put to him on cross-examination did not open the door for her to testify as to the destruction of the original copies of the separation agreement. The Act of June 11, 1891, P. L. 287, does not make Mrs. Ray under the circumstances of this case a competent witness to testify to the alleged destruction of the agreement. This court said in Montelius v. Montelius, 209 Pa. 541, 543: "We have uniformly held, when it has been urged that the purpose of the Act of 1891 is very broad, that its words have but one meaning, and that the lips of one who would have been incompetent before its passage are unsealed only when its conditions of his competency arise on the trial."

Even though the conversation between Taylor and Mrs. Ray was as she testified, that would not make Taylor "another person" within the meaning of the Act of June 11, 1891, P. L. 287, between whom and Mrs. Ray the "relevant matter" referred to in said act occurred, so as to make Mrs. Ray competent to testify, after Taylor had testified as he did, to the relevant matter of the cancellation of the agreement, adversely to the rights of those who succeeded to the deceased's rights in this relevant matter. The Act of 1887 would soon become impotent to protect rights which had passed from a decedent to a party on the record, who represented the deceased's interests in the subject of the controversy, if the surviving parties to the things or contracts giving

rise to the right could be made competent by the simple expedient of that party's cross-examining a witness on a matter collateral to the subject matter to which the witness was directly called to testify, and asking the witness in the course of the cross-examination on a collateral matter if the surviving party had not made statements to the witness adverse to the deceased's right in the contract, and then securing a negative answer. For the courts to permit an incompetent witness to become competent by this simple expedient which could be employed in every case described in subparagraph (e) of section 5 of the Act of May 23, 1887, P. L. 158, would furnish a classic example of accomplishment by indirection of something which the law expressly forbids.

Taylor was called to identify the signature of Ray on the trust agreement, and to testify that a copy of the separation agreement came into the possession of the trust company, that the terms of the trust agreement were complied with by the company and monthly income therefrom was paid to Mrs. Ray, and to prove that a search was made for the original copy of the agreement of September 29, 1928, and that the search was unsuccessful. He was not asked on direct examination anything about any conversation with Mrs. Ray about the cancellation of the separation agreement. The questions asked Taylor by Mrs. Ray's counsel were not proper cross-examination. They did not relate to the subjects Taylor testified to on direct examination, but to subjects collateral to the issue in this case, and the respondent having cross-examined the witness as to a collateral fact was bound by his answers: Griffith v. Eschelman, 4 Watts 51; Commonwealth v. Clemmer, 190 Pa. 202, 208.

"The test of whether a fact inquired of in cross-examination is collateral is this, Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?": Hildeburn v. Curran, 65 Pa. 59, 63.

In the case before us, Mrs. Ray, even if competent, would not be entitled to prove as part of her case the fact that *she told Taylor* that she and her husband had agreed to destroy the separation agreement. What she told Taylor or anybody else about what she and her husband agreed would be incompetent and irrelevant. If the law had not made her incompetent as a witness to testify on the subject matter of the alleged cancellation of the agreement of September 29, 1928, she could have testified in support of her plea that she and her husband had agreed to destroy the separation agreement and had destroyed it, but this would be quite another thing from testifying as to her conversation with some other person about it.

If Mrs. Ray could have proved that the separation agreement had been destroyed by the mutual cancelling action of the parties to it, she would have acquired for herself a larger interest in the property formerly of the other party to that alleged cancelling agreement and action (which other party's right in that property had passed to a representative on the record) than would be hers if the agreement of September 29, 1928, was held to be still in full force and effect. Since death sealed the lips of this other party on the question of the alleged cancellation of this agreement, it is the wise policy of the law to exclude the testimony of the surviving party to the alleged "thing or contract in action" who would benefit by proof of the cancelling act pleaded. To permit this interested witness to inject into the record the testimony in question would give her an undue advantage over the heirs of the man who is not alive to confront and contradict her.

It was correctly held by the court below that the separation agreement of September 29, 1928, was not cancelled by the parties to it and that the respective rights and obligations therein created and defined still exist.

The seventh assignment of error is overruled.

In view of our ruling on the fourth, fifth and seventh assignments, it is unnecessary to discuss the others, as they are cognate to the assignments already acted upon and their overruling logically follows. They are all overruled.

The decree of the court below is affirmed. Costs to be paid by appellant.