**FIRST CAMDEN NAT. BANK & TRUST CO. v. J. R. WATKINS CO.**

No. 359.

District Court, E. D. Pennsylvania.

Jan. 13, 1941.

Richardson Dilworth, Harry A. Kalish, and Murdoch, Paxson, Kalish & Green, all of Philadelphia, Pa., for plaintiff.

Cuthbert H. Latta, Jr., Richard Hay Woolsey, Mark Willcox, Jr., and MacCoy, Brittain, Evans & Lewis, all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This matter arises upon the defendant's motions (1) to set aside the jury's verdict and the judgment entered thereon in favor of the plaintiff and to enter judgment for the defendant in accordance with its motion for a directed verdict, or (2) in the alternative, to grant a new trial.

The action is one to recover damages for the alleged conversion of certain vanilla beans. J. N. Limbert & Co., hereinafter called "Limbert", was a corporation dealing in vanilla beans. On July 21, 1936, Limbert caused to be deposited in Bailey Warehouses, a bonded public warehouse in Philadelphia, 24 cases of vanilla beans, weighing 2,210 pounds 11 ounces. The beans were delivered by employees of the warehouse to the bonded section on the ninth floor, which floor was leased to Limbert, where the beans remained until August 4, 1936.

On July 29, 1936, when the beans were still in the warehouse, Bailey issued, in the standard form provided by the Uniform Warehouse Receipts Act, non-negotiable warehouse receipt No. 41662 for these beans. The receipt was issued in the name of plaintiff bank and was delivered to the bank by Limbert as collateral security for a loan of $3,500 made by the bank to Limbert that day and evidenced by a promissory note which contained a clause that the property was also to stand as collateral security for all other past and future indebtedness of Limbert to the bank.

On the day the loan was made, Limbert was indebted to the bank in the amount of $29,400, in addition to the loan of $3,500 made that day, and the total indebtedness has never since then fallen below $20,000. The note of July 29, 1936, was renewed several times, the last renewal note, dated May 2, 1938, being in the reduced amount of $2,750. Each renewal note has again recited that receipt No. 41662 was held as collateral security for all of the indebtedness of Limbert to plaintiff bank, and plaintiff has continuously held that receipt as security for such indebtedness from July 29, 1936, to date.

On August 4, 1936, Limbert removed, sold and shipped to defendant from Bailey Warehouses 1,579 pounds, 13 ounces of the above mentioned vanilla beans for which receipt No. 41662 had been issued. Plaintiff neither knew of, nor consented to this removal and sale. Defendant paid Limbert for the beans it purchased and consumed them without the knowledge or consent of plaintiff, to whom the beans had been pledged by the delivery of the receipt.

On April 29, 1937, plaintiff, as a result of Limbert's fraudulent misrepresentations, and in the belief that all of the beans which had been pledged to it were still in the warehouse, signed a withdrawal slip, submitted by Limbert, permitting Limbert to withdraw five cases from the warehouse upon the payment by Limbert of $750. Actually the cases had been removed from the warehouse on August 4, 1936, more than seven months earlier, when they were delivered to defendant by Limbert.

Limbert discontinued its business on May 20, 1938, with no assets with which to pay its indebtedness to plaintiff. The indebtedness to plaintiff bank then totalled $36,700. Plaintiff then learned for the first time of the removal from Bailey Warehouses and the sale to defendant, by Limbert on August 4, 1936, of the beans pledged to plaintiff on July 29, 1936, under warehouse receipt No. 41662. Plaintiff promptly made demand upon defendant for the beans, or the fair value thereof. The demand was refused and this suit was instituted. The jury returned a verdict for plaintiff for $3,768.14.

The two principal reasons assigned by defendant in support of its motions are (1) That the vanilla beans in controversy were never legally in the warehouse's possession and that the warehouse receipt issued therefor was a nullity and gave no valid pledge to plaintiff; (2) That defendant should have been credited with the $750 paid by Limbert to the plaintiff bank in April, 1937, when five cases of beans were released by the plaintiff upon misrepresentations of Limbert.

Testimony on the issue of possession was given by Thomas J. Bradley, who was a shipping clerk employee of Limbert's, and by Walter A. Bailey, the proprietor of Bailey Warehouses, and Edward R. Sweeney, his office manager. From this, it appears that Bailey Warehouses consisted of a group of sixteen separate buildings, all located within two city blocks. Limbert paid for the use of the ninth floor of building No. 11 for storage purposes and also had an office in building No. 15, some distance away. The storeroom was divided into two sections, free and U. S. Customs bonded, the latter being in the center of the floor, surrounded on three sides by the free section, and enclosed by a brick wall and a refrigerator door with a government lock thereon.

Bradley, called by plaintiff, testified that his duties and those of Limbert's other shippers were almost totally confined to the storeroom, unpacking beans delivered there, inspecting, weighing, repacking and shipping. The only means of access to the

ninth floor was an elevator operated by an employee of Bailey; and, on the elevator door to the storeroom was the following inscription: "J. N. Limbert & Co., Del. Ave. & South St., Phila." As respects the shipment in controversy, he testified that the beans arrived on July 21, 1936, and were placed in the bonded section; that, on the same day, one of Limbert's employees removed them from the bonded into the free section where the work of unpacking the cases and inspecting the beans was begun; that he, Bradley, was employed in inspecting, weighing and repacking until August 4, 1936, when the beans were shipped to the defendant; and that from July 28, 1936, until the date of shipment, the beans always were in the free section. He explained that although the door to the bonded section contained a government lock, the key thereto always was left on top of the door and was used continually by Limbert's employees who, thus, always had access to the bonded section.

Bailey, the warehouse proprietor, and Sweeney, his office manager, were called by the defendant. They testified that 24 cases of vanilla beans marked with the even numbers from 2 to 48 were received by Bailey Warehouses and receipted for by the warehouse platform-man and were taken to the ninth floor of Bailey Warehouses upon the warehouse elevator operated by a warehouse employee, this being the only way that access to the ninth floor could be obtained. The beans were then stored on this ninth floor which had been rented for storage by Limbert. Eight days later, on July 29, 1936, Limbert came to Sweeney for a warehouse receipt. Sweeney checked his records, found that the goods had actually been received on the ninth floor, and, upon Limbert's assurance that the goods were still there, issued the warehouse receipt which was delivered to the bank by Limbert.

Bradley testified that on August 4, 1936, six days after the warehouse receipt was issued, seventeen of these identical twenty-four cases were shipped out to the defendant without the knowledge of either the plaintiff or Bailey, the warehouseman. This was made possible due to the laxity of the supervision exercised by the Government inspector and the warehouse employees. Bailey, the warehouseman, testified that he knew it was his duty to prevent unauthorized shipments of vanilla beans covered by the warehouse receipt and declared that "We were to supervise them, but we did not supervise them." He said his employees did enter when it was necessary to deliver goods into the bonded section or to make receipts, and that his employees did go "from floor to floor" to look around.

■ It seems to me the testimony established that non-negotiable warehouse receipt No. 41662 was issued in standard form by a bonded public warehouseman to the plaintiff for 24 cases of vanilla beans and was accepted in good faith by the plaintiff on July 29, 1936, the date of its issuance, as security for loans. The vanilla beans for which the receipt was issued had been received eight days before by the warehouse, placed by employees of the warehouse on the ninth floor thereof and remained there on the day the receipt was issued and delivered to plaintiff. Access to the ninth floor was possible only by an elevator owned by the warehouse and operated by one of its employees, and the employees of the warehouse at all times had the right of access to the ninth floor, the right to supervise and control goods there stored, and they did, in fact, from time to time go to the floor. When the warehouse receipt was issued the manager of the warehouse checked the records to see that the vanilla beans to be covered thereby had been received, and ascertained from Limbert that they were still in the warehouse.

To hold that a bank taking for value a warehouse receipt issued by a bonded public warehouseman under these circumstances received a nullity would put an end to the use of warehouse receipts as a commercial medium, and would make it impossible for banks to make commercial loans on the security of warehouse receipts. Our courts have never permitted any such result to follow from so established and regular a business practice. Taney v. Penn Nat. Bank, 232 U.S. 174, 34 S.Ct. 288, 58 L.Ed. 558; Dale v. Pattison, 234 U.S. 399, 34 S.Ct. 785, 58 L.Ed. 1370, 52 L.R.A.,N.S., 754.

The defendant contests the validity of the receipt upon two grounds: First, that the lease of the ninth floor by the warehouse to Limbert deprived this floor of its character as a public warehouse, so that a warehouse receipt issued for goods stored thereon was a nullity; and, second, that Limbert's having had access to, and having

exercised control over the vanilla beans, destroyed the public warehouse relation.

■ As to the first ground it becomes necessary to consider the relationship between Bailey and Limbert. A printed common lease form was used in which Bailey is designated the "Lessor" and Limbert, the "Lessee", and at the end thereof, the following typewritten notations appear: "The Lessor agrees to furnish light, heat, janitor service, elevator service, watchman and maintenance without extra charge. The Lessor further agrees to furnish the labor of handling the Lessee's merchandise in and out of the warehouse with no extra charge". In First Camden National Bank & Trust Co. v. Bailey, Philadelphia C. P., June Term, 1938, No. 292, in which the instant plaintiff obtained judgment in the Court of Common Pleas of Philadelphia County against Bailey for damages on account of his negligence in permitting Limbert to remove the beans without the surrender of the warehouse receipt, Judge Bok had occasion to consider the nature of the agreement between the parties and concluded that it constituted a contract of bailment, observing: "Defendant was a public warehouseman engaged in his regular occupation in the transaction here involved. The building was actively operated and managed as a warehouse by his employees. He listed the goods brought into the building by Limbert, and retained the list, checking it before the warehouse receipts were issued. He admitted his duty when he issued the receipts. It doesn't matter that the parties found it expedient to determine the storage fees at a fixed rate based upon floor area rather than by the number of articles deposited. Limbert used considerable space, with considerable turnover. A flat charge was not unfair and certainly more convenient than a unit charge. It does not convert a contract of bailment for storage into a lease of real property."

While the learned opinion of Judge Bok is not binding upon this Court, I am in accord with the views expressed therein. The facts produced before me in the instant case on this point being similar to the facts expressed in his opinion, I adopt his conclusions on this point.

■ As to the second ground, it is immaterial to the rights of the party holding the receipt that because of the subsequent negligence and improper supervision of the public warehouseman, a third person had access to, and was able to remove physically the goods stored, so long as the person to whom the warehouse receipt is issued has no knowledge or notice thereof.

Regarding the degree of possession which must be had by the warehouseman, language can be found in many cases to the effect that the pledgee's possession must be exclusive and complete and that the dominion of the pledgor must also be completely excluded. Hamilton Ridge Lumber Sales Corporation v. Wilson, 4 Cir., 25 F.2d 592; In re Merz, 2 Cir., 37 F.2d 1; In re Spanish-American Cork Products Co., 4 Cir., 2 F.2d 203. However, it is to be noted that the "warehouse receipts" cases enunciating so broad a dogma contain the peculiarly common characteristic that the arrangements involved therein were either the well-known "field warehousing" plan or one akin thereto. In those cases declaring the warehouse receipt a nullity, it is to be observed that the property had remained on the premises of the pledgor, who retained complete control over the goods and, in most instances, a person who owned goods attempted to set up a storage warehouse of his own for what amounted to fraudulent purposes and issued fraudulent receipts generally to himself in some other name for goods held by himself in his own place of business. In all cases the warehousing arrangement was purely fictitious. For this reason it seems to me the cases cited by the defendant in support of its position on this point are inapplicable to the facts in the instant case.

■ In the present case the plaintiff accepted a standard form of non-negotiable warehouse receipt issued by a bona fide bonded public warehouse in which the plaintiff had no interest, and over which it had no control. The receipt was accepted in the regular course of business in good faith as collateral security for a loan. When it was issued by the warehouse and received by the bank, the vanilla beans for which it was issued were, in fact, in the warehouse and subject to the physical supervision and control of the warehouse.

I am, therefore, decided that the mere subsequent negligence of the warehouseman which enabled the defendant some time later to obtain wrongful access to the goods for which the receipt had been issued, did not affect the genuine validity of the warehouse receipt issued to plaintiff. It follows that no error was committed in

refusing to direct a verdict for defendant on the ground that the warehouse receipt was a nullity.

■ Defendant contends however that the jury was insufficiently instructed upon the question of the possession of the goods at the time the receipt was issued. A review of the evidence and of the charge convinces me the jury was properly instructed. The testimony of the witnesses for both sides established that the vanilla beans in question were received by the warehouse's employees, were taken by them to the ninth floor, where they remained when receipt No. 41662 was issued, and that the warehouseman at all times had access thereto, and the right to supervision and control thereover. Upon the evidence, an instruction upon the question of the warehouseman's possession would have been upon a hypothetical state of facts not in evidence.

Nevertheless the jury was charged upon the question in accordance with the defendant's request for charge. The Court affirmed and read to the jury defendant's second point for charge, which is as follows: "The defendant's points: I will read Number 2. '2. Unless you find that the goods described in warehouse receipt 41662 were in the actual possession of Bailey Warehouses to the exclusion of J. N. Limbert and Company at the time of the issuance of the said receipt on July 29, 1936, your verdict must be for the defendant.' I will affirm that." Before reading any of the points for charge the jury was instructed: "Now counsel for both sides have presented points for charge which it is my duty to read to you. I will read only those that I affirm, and state to you that those that I affirm I consider to be the law;" In reply to the defendant's third point for charge the court observed that the beans for which the plaintiff is bringing suit must actually have been in the warehouse "in the possession of Baileys when they issued the receipt." It would appear that the issue of possession was adequately presented. Any further comment upon the question of possession could well have been error prejudicial to plaintiff since there was no evidence upon which the jury could have found that the receipt was not validly issued.

■ The defendant also contends that, conceding the plaintiff an interest in the vanilla beans, the release of five cases on April 29, 1937, deprives the plaintiff of any right to recover from the defendant for conversion of those five cases. The jury was instructed to the contrary. This release was obtained by Limbert's fraudulent representation that the five cases were in the warehouse at the time when actually they were removed more than eight months prior thereto. The court's charge was to the effect that, if the beans had been pledged to the plaintiff and converted by the defendant before the release, the release was no valid defense to the defendant, its liability having theretofore accrued. Having been procured by fraud, the release was voidable at the option of the plaintiff. Furthermore it was not a prerequisite to avoidance that Limbert be repaid the $750 consideration for execution of the release, since Limbert owed the plaintiff a sum far exceeding this amount. Farrell v. First Nat. Bank of Philadelphia, D.C., 263 F. 778, affirmed, 3 Cir., 272 F. 371, certiorari denied 257 U.S. 634, 42 S. Ct. 48, 66 L.Ed. 408, 16 A.L.R. 651; Id., 257 U.S. 635, 42 S.Ct. 49, 66 L.Ed. 408.

Defendant also objects to the admission of secondary evidence of the notes given by Limbert to the plaintiff. It is true secondary evidence is not admissible unless it appears that the best evidence is inaccessible. In re Ray's Estate, 304 Pa. 421, 156 A. 64, 79 A.L.R. 772. There was testimony that after each note was renewed, the old note was returned to the borrower, which is the customary practice. I am satisfied of the practical if not absolute unavailability to the plaintiff of the notes themselves. As stated in Wigmore on Evidence, Third Edition, Section 1192: "The thought is here not that a certain kind of evidence is absolutely necessary, but that a certain kind is to be used if it is available. If it is not available, then it is not insisted upon." At any rate the person who negotiated the transactions testified that the one note put in evidence was identical as to its terms with the other notes involved. Furthermore this is not a suit against Limbert upon the notes given by Limbert, but an action for conversion of the vanilla beans which had been pledged on a warehouse receipt.

Defendant contends also that these were not renewal notes but that on the maturity date the obligation on the old note was discharged and a new debt was created by the new note. The evidence showed that the transactions were the ordinary renewal transactions entered into by banks regular-

ly. Furthermore, the warehouse receipt had been pledged originally for all of the indebtedness of Limbert to plaintiff and that indebtedness never at any time was less than $20,000.

Defendant further contends that it should be discharged of its liability because the check which it delivered to the order of Limbert in payment for the converted beans was deposited to Limbert's account in the plaintiff bank. Plaintiff bank was not given the check for its own use but was merely an agent for collection, and the bank did not take the proceeds of the check but instead credited it to Limbert's account. There appears to be no merit in this argument.

Another contention of the defendant is that, since the balance due on the particular loan for which the warehouse receipt was given as collateral is $2,750, the plaintiff, in no event is entitled to recover the full value of the beans converted but the verdict must be restricted to $2,750. Defendant has cited a number of Pennsylvania cases for the proposition that the holder of collateral pledged for an antecedent indebtedness is not a purchaser for value. This principle of law has no application to the facts in the present case. When plaintiff received the warehouse receipt issued by a warehouseman for goods in his possession in the warehouse, it received as pledgee constructive possession of the beans and it was entitled under the agreement to all the beans pledged to secure the past, present and future indebtedness of Limbert. When these beans were subsequently purchased by the defendant, the latter acquired no other rights to the converted beans than Limbert had. The purchaser of property wrongfully converted acquires no other title than the seller had. McMahon v. Sloan, 12 Pa. 229, 51 Am.Dec. 601; Rice v. Yocum, 155 Pa. 538, 26 A. 698.

On December 14, 1940, the defendant filed a supplemental statement in support of its motion for a new trial, giving as a reason the fact that Thomas J. Bradley, a witness who testified for the plaintiff, wrote three letters which cast doubt upon the credibility of Bradley and upon the accuracy of his testimony in the instant case. One of the letters was sent on November 12, 1939, to A. Schilling & Company in San Francisco, California, who are defendants in another suit brought by plaintiff in the District Court of the United States for the Northern District of California to recover for the conversion of other vanilla beans. This letter explained that an attorney representing Schilling called upon Bradley with a view of having him testify for Schilling. The letter further stated that he could give information that would kill the case against them and in return for this information would appreciate obtaining a position with the Schilling firm. The other two letters are of a similar nature. These letters were produced by counsel for Schilling at the taking of depositions on October 29, 1940, in connection with the California case. Without condoning the character of the letters, I am unable to perceive any reason justifying a new trial. Both Bradley and his sister, the bookkeeper of Limbert, testified from the books and records of Limbert and from these were able to trace the beans delivered to the defendant. After-discovered evidence having for its purpose only the impeachment of the credibility of witnesses furnishes no sufficient reason for a new trial, unless it clearly appears that harmful error occurred at the trial. Commonwealth v. Becker, 326 Pa. 105, 191 A. 351; Commonwealth v. Elliott, 292 Pa. 16, 140 A. 537; Peterman v. Enggasser, 280 Pa. 528, 124 A. 681; Commonwealth v. Carter, 272 Pa. 551, 116 A. 409.

The defendant's motion to set aside the verdict and judgment thereon and to enter judgment for defendant in accordance with its motion for directed verdict and the defendant's motion for a new trial are both denied.