BUNTING v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. February 19, 1913. Rehearing Denied April 14, 1913.)

No. 1,589.

1. RAILROADS (§ 222*)—OPERATION—EMISSION OF SMOKE—NEGLIGENCE—EVI-DENCE.

In an action by an adjoining property owner for injuries to his proper-ty by the alleged negligent operation of a railroad through the emission of smoke while the engines were drawing trains into a terminal, and while they were standing apart in the yard preparing to leave, evidence of four retired engineers who had been in the habit of running trains into the Washington terminal and the Grand Central Terminal in New York City that for several years they had successfully used coke as a fuel was insufficient to charge defendant with negligence in using bituminous coal for such engines, instead of coke or anthracite.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

2. RAILROADS (§ 222*)—NEGLIGENT OPERATION—SMOKE.

In support of a charge of negligence against a railroad company for permitting its terminal engines to emit smoke to the damage of adjoining property by the use of bituminous coal, it is not sufficient for plaintiff to show a use of other fuel, but he must also show that the use of a non-smoke producing fuel was not only scientifically practicable, but also economically and financially so.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

3. TRIAL (§ 145*)—QUESTIONS OF LAW OR FACT—WITHDRAWAL FROM JURY.

Where there was no sufficient evidence to support a verdict on one of the grounds of negligence alleged, the court properly withdrew the same from the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 328, 341; Dec. Dig. § 145.*]

Bradford, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. B. McPherson, Judge.

Action by Annie E. Bunting against the Pennsylvania Railroad Com-pany. Judgment for defendant (189 Fed. 551), and plaintiff brings er-ror. Affirmed.

E. Spencer Miller, of Philadelphia, for plaintiff in error.

John Hampton Barnes, of Philadelphia, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and BRAD-FORD, District Judge.

GRAY, Circuit Judge. The plaintiff, a citizen of the state of New Jersey, brought suit in the court below against the defendant, a corpo-ration of the state of Pennsylvania, to recover damages for injury to certain property of hers, by reason of the alleged negligence of the defendant company.

The defendant is a railroad company, chartered for the purpose of carrying on a transportation business for passengers and merchandise by means of cars and the use of locomotive engines upon its tracks.

In this suit, the plaintiff seeks to recover for loss and diminution of the rentals during the last six years of her lot and dwelling house, which she had owned for nearly 20 years, situated at the southwest corner of Thirty-Second and Baring streets, caused, as she alleges, by great volumes of smoke, gases and soot negligently discharged from the engines of defendant company.

It is charged that the locomotives actually engaged in moving trains to and from the terminal at Broad street were in part the source of this nuisance, but that a very large proportion came from a permanent, but always changing, collection of waiting locomotives in the yards of the defendant company, 600 feet away, on the open tracks and in one or more roundhouses; that in the yard there were constantly between 50 and 150 locomotives, and in the roundhouse always upwards of 40 more. The evidence shows that these locomotives, in something like the numbers charged, were constantly kept at the places named, awaiting orders to take out trains from, or standing there after delivering trains at, Broad Street Station. Here the necessary facilities were provided for reloading fuel and letting down and relighting fires. The locomotives were in the care of "hostlers" at these waiting places, who cleaned and made them ready, by building fires, etc., for the next run. It is not denied that this parking of the engines at the end of their runs, and their preparation for taking out trains, was necessary to carry on the large transportation business which the defendant was authorized by its charter to conduct for the public service.

It is charged, and there is evidence to support the charge, that when the wind blew from this quarter, the locality of plaintiff's house was much affected by the smoke from these engines; that the atmosphere was sometimes clouded by it, houses discolored and paint deteriorated, flowers and other growths damaged and killed, and the interior of houses often rendered uncomfortable until all windows were closed. In fact, there is no dispute as to the annoyance caused by this smoke to those living in, and in the neighborhood of, plaintiff's house. That the defendant company, in the exercise of the extensive and necessary powers conferred upon it by the Legislature for the conduct of its business, was authorized to fire its locomotives for the production of steam, and keep them in the places adapted and necessary for their service, cannot be questioned, and it is not claimed that smoke discharged by the defendant's locomotives, in the ordinary and proper operation of its business, constitutes an offense for which any person can recover damages. But to say this, does not concede the right of this defendant, or any other person, to conduct its lawful operations negligently or carelessly. If by such negligence or want of care, injury is done to others, a right of action, of course, accrues to those who have been so injured.

The proposition on which the plaintiff's case is put is, that the defendant company has been negligent in firing these engines where they stood, and in going in and out of Broad Street Station, so as to produce an unnecessary and avoidable quantity of smoke, constituting the nuisance complained of. This negligence is charged in two respects, viz., in making use of a variety of fuel on these engines while so stand-

ing, or while going in and out of the Broad Street terminal, which emits, when burning, a large and unnecessary amount of smoke, and also in the manner in which its employés handle the furnaces and fires in its said locomotives and shops, and in omitting such devices and safeguards as would prevent such excessive production of smoke.

The case was heard upon the issues joined as to these charges, and, after having been submitted to the jury in a well considered charge by the learned judge of the court below, the verdict was rendered in favor of the defendant, and from the judgment upon this verdict, the present writ of error was sued out by the plaintiff. Of the assignments of error, the only one that especially challenges our attention is the second, which alleges error in the following portion of the learned judge's charge:

"The plaintiff's case is put upon two grounds. There are two branches of it. Perhaps that is the better way to state it. One of them is: It is said that by the use of a different kind of fuel in the operation of these locomotives the injury complained of could have been avoided, and some evidence has been offered to you upon that subject. I have just this to say to you upon that matter. I shall not submit that question to you, because I do not think the evidence justifies me in so doing. * * * I refer to the use of anthracite coal and the use of coke. Therefore you may lay that question aside from your determination."

As to its manner of using bituminous coal, the jury found in favor of the railroad, and that it was guilty of no negligence in that respect. But it is contended the trial judge erred in withdrawing from the jury the question, whether, in spite of this nonnegligent use of bituminous coal, the railroad was guilty of negligence in not substituting coke or anthracite coal therefor. We have given this contention the deliberate and thorough consideration which so grave and far-reaching a question demands. We are not convinced, however, that error was committed by the court's action in the premises.

[1] The evidence thus withdrawn from the consideration of the jury, was the testimony of four retired locomotive engineers. Two of them were employed upon the Baltimore & Ohio Railroad. One of them testified that he had had experience for about a year in running trains into the new terminal at Washington, and that under general orders in that respect, he had successfully used coke in going in or out of the terminal. The other testified to a like experience for about two years, as to the use of coke in going into or leaving the same terminal. The other two engineers testified as to their experience in running engines into the Grand Central Station in New York,—one of them employed on the New York Central and the other on the New York, New Haven & Hartford, both of which roads, however, used the Grand Central Terminal. They also testified that they had for several years successfully used coke as a fuel in going into and out of this station. Their testimony is not clear as to the operative conditions under which coke was so used, except that the approach to the New York Central Terminal is through several miles of tunnel, where the smoke problem is one of great moment.

The testimony of these engineers as to the two terminals—one in Washington and one in New York—was the only testimony adduced

or relied upon as tending to support its allegation that it was negligent in the defendant company not to use coke or anthracite in starting its fires at the roundhouse and on the tracks where locomotives were parked, and in approaching and leaving the Philadelphia terminal. It is to be noted that the testimony of these witnesses touched only upon the running in and out of the terminals in question, with passenger trains, and did not go to the extent of showing how far the use of coke or anthracite was practicable with the 150 engines—largely freight engines—parked in the yard and the 40 or 50 more in the roundhouse, from which the greater part of the smoke complained of in the plaintiff's neighborhood came, when the wind blew in that direction. It is significant, also, that this testimony was the testimony of four retired engine drivers of limited experience, and not of operating officers of those roads, who could speak generally as to their practice in this regard, or as to the practicability of the use of either coke or anthracite by defendant under the conditions surrounding the conduct of its business at and near its Philadelphia terminal. There was no attempt to show that there was use, general or otherwise, of coke or anthracite for the purpose stated by any of the large number of the other roads of the United States, or indeed, that it was generally possible. It cannot, therefore, be claimed that any such use or practice was shown by the testimony as would establish a standard or test of defendant's duty in this respect. On the contrary, it can hardly be questioned from such testimony as was adduced by plaintiff, that the defendant's practice conformed to the general usage in this regard, as, for example, in Chicago, where plaintiff's witnesses testified that all of the 30 railroads entering that city used bituminous coal in approaching and leaving stations. So also as to the city of Cleveland.

[2] We do not mean to say that a general usage is an exclusive or final test in the premises, but that, where plaintiff undertakes to show, in a business so large and wide extended as railroading, what has been done by other railroads as a test or standard of duty for the defendant, it must be made evident that what is proposed is not only scientifically practicable, but also economically and financially so. No superintendent of motive power on any railroad, or other responsible or scientific person whose experience or observation would give weight to his testimony, was adduced by plaintiff to testify as to the practicability of the use of anthracite or coke by the defendant for the purposes stated. On the contrary, defendant produced its own responsible officers, qualified by study and experience as to the matters inquired about, who testified that the use of such fuel was not reasonably practicable, under the circumstances surrounding defendant's business, for the purpose stated. Among others, Vice President Atterbury, of the defendant company, testified that he was completing his thirty-fifth year in railroad service; that he served as an apprentice in the Altoona shops of the defendant company; that he then became assistant foreman of engines for three years, having charge of locomotives, enginemen and firemen, successively on the Philadelphia Division, the Maryland Division, and the Pittsburgh Division; that he

afterwards had charge of motive power of the Western Division, and then came back to the main line as superintendent of motive power at Altoona, and later became general superintendent of motive power for the whole system. He was examined and cross-examined at great length, and testified substantially that the use of either coke or anthracite for leaving or entering the Philadelphia terminal, or building the fires in the region complained of, was not reasonably practicable, explaining the difference between conditions at Philadelphia and those obtaining either at Washington or at the Grand Central Station in New York. To the same effect was the testimony of Edward D. Nelson, engineer of tests at Altoona, and former superintendent of motive power; of John R. Alexander, general foreman of engines; of Alfred W. Gibbs, the then general superintendent of motive power; and of William Colledge, road foreman of engines, who also testified as to the instructions given to firemen, and the devices used, in order to prevent an unnecessary emission of smoke in firing locomotives. Another witness was also introduced, who had long experience as an engineer and fireman and who ran engines out at Washington for a number of years, and experimented with coke; he testified to the difficulty experienced in using it, and that on heavy trains it was not a success. Other practical witnesses were produced, who testified as to the method of firing and the precautions used to prevent the unnecessary emission of smoke.

It was in view of the deficiency of plaintiff's testimony and the positive character of defendant's testimony, that the learned judge of the court below, in charging the jury at the close of the case, withdrew from their consideration the question as to the use of anthracite or coke as a fuel for the purposes stated, submitting however, to the jury the other branch of the question as to defendant's negligence, viz., whether it had failed to use reasonable care in the management and firing of its locomotives to prevent an excessive or unnecessary emission of smoke. As to this, there was evidence on both sides, and upon that evidence the jury found its verdict.

The question that has just been discussed is raised by the second . assignment of error. The other assignments relate to this question, but are subsidiary thereto. They are without merit and require no special consideration.

[3] The aspect, then, in which the case is now presented to this court, is the narrow and frequently recurring one, whether the court below, in holding that the evidence in support of a specific allegation of negligence did not justify a verdict in favor of the plaintiff, properly exercised its judicial discretion. The question in no wise differs in character from what it would have been if the use of an improper fuel had been the only ground upon which negligence was charged and the court had given peremptory instructions to the jury in favor of the defendant, for the reason that there was no sufficient evidence to support that charge, or if it had on that ground, after verdict for plaintiff, granted a motion in arrest of judgment.

The plaintiff's case, as set forth in the statement of claim and as

tried in the court below, as we have seen, rested solely upon two grounds:

First. That by the use of a different kind of fuel in the operation of these locomotives, the injury complained of could have been avoided, and therefore that failure to use such fuel was negligent.

Second. That there was negligence upon the part of the Railroad Company's servants, in the operation and management of these locomotives, and particularly in the operation and management of the fires therein, which caused an undue and excessive emission of smoke.

It was not claimed in the pleadings nor seriously contended in argument, that defendant was liable, as for a nuisance, for maintaining its tracks, roundhouse, and terminal in the place and position in which they were maintained. Liability was based on the specific charges of negligence in using a fuel that produced an unnecessary amount of smoke, and in not using reasonable care in firing the locomotives, so as to prevent the unnecessary emission of such smoke. In this salient feature, this case differs from that of the Balto. & P. Ry. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739, cited by plaintiff in error. The facts in that case were briefly these:

The church of the plaintiff below was situated on a public street in the city of Washington and had been used as a church for many years. After its erection, the defendant company was authorized by act of Congress to lay its tracks within the limits of the city and to construct other works necessary and expedient to the proper completion and maintenance of its road. Some years after the erection of the church building and its occupation as a place of worship, the defendant erected upon a parcel of ground acquired by it immediately adjoining the church property, and until the commencement of the suit, maintained, an engine house and machine shop, where a large number of locomotives and steam engines were housed and their fires made, and to and from which the locomotives were propelled and in which they were coaled, watered, repaired, and otherwise used. When the ground was first broken for the erection of these works, plaintiff protested to the company that they would prove a nuisance and be ruinous to plaintiff's enjoyment of its property. The defendant company, however, proceeded to erect the works upon the building line of its own premises, within five and a half feet of the church edifice, and constructed upon the engine house 16 smokestacks, lower in height than the windows of the main room of the church; from the time of the erection and occupation of these buildings, church services were habitually interrupted and disturbed by the hammering noises made in the workshops of the company, the rumbling of its engines passing in and out of them, and the blowing off of steam, and it was alleged that in summer time, when the windows of the church were open, smoke, cinders, and dust were blown from the smokestacks, through the windows, settling upon pews and furniture and soiling the clothes of the occupants, accompanied by an offensive odor which greatly annoyed the congregation. For the almost wanton maintenance of this undoubted nuisance, action was brought by the church corporation.

There is nothing in the report of the case to show that the action

BUNTING V. PENNSYLVANIA R. CO.

was maintained for, or that there was any question as to, the mere negligent use of the shops and premises of the defendant, in consequence of which negligent use the nuisance arose. It was not the negligent use of lawfully maintained shops and roundhouse, but the maintenance itself of such shops in such close proximity to the church, that the necessary and nonnegligent use and occupation thereof constituted the injury complained of. It was the placing and maintenance of these works themselves so close to the church property, with their necessary and unavoidable accompaniments of noise, steam and smoke, and obstruction on the tracks entering the same, that constituted the nuisance. Such works could have been and should have been erected elsewhere. This case belongs to the category of those where actions are brought for nuisances in the maintenance of noisome trades and occupations in the built-up portions of towns, and so near human habitations as to constitute both a public and a private nuisance. Butchers' shambles, bone boiling establishments, tallow and soap making factories, and certain chemical works are well known examples of nuisances of this kind. In these cases, it is the necessary and unavoidable odors or hurtful gaseous emanations from such establishments that constitute the nuisance. The trades themselves are useful and lawful, and the gravamen of the cases as presented to the courts is, not that the injury complained of has been occasioned by a negligent conduct of the business, but that it is by reason of the carrying on of the business at all in a closely built neighborhood or contiguous to a private habitation, however carefully and nonnegligently the same may have been conducted. Mr. Justice Field himself places the case in this category, when, by way of illustration, he says:

"There are many lawful and necessary occupations which, by the odors they engender or the noise they create, are nuisances when carried on in the heart of a city, such as the slaughtering of cattle, the trying of tallow, the burning of lime, and the like. Their presence near one's dwelling house would often render it unfit for habitation. It is a wise police regulation, essential to the health and comfort of the inhabitants of a city, that they should be carried on outside of its limits. Slaughterhouses, lime-kilns, and tallow furnaces, are, therefore, generally removed from the occupied parts of a city, or located beyond its limits."

In the immediately preceding paragraph, he says:

"If, as asserted by the defendant, the noise, smoke, and odors, which are the cause of the discomfort and annoyance to the plaintiff, are no more than must necessarily arise from the nature of the business carried on with an engine house and workshop as ordinarily constructed, then the engine house and workshop should be so remodeled and changed in their structure as to prevent, if that be possible, the nuisance complained of; and if that be not possible, they should be removed to some other place where, by their use, the plaintiff would not be thus annoyed and disturbed in the enjoyment of its property. There are many places in the city sufficiently distant from the church to avoid all cause of complaint, and yet sufficiently near the station of the company to answer its purposes."

Quoting in his brief this paragraph from Mr. Justice Field's opinion, counsel for the plaintiff in error frankly says:

"We do not lay stress upon this point, because we chose to prosecute the case before the jury on the broad contention that the defendant had been negligent."

And we may add that, from what has been said, it is apparent that no other course was open to the plaintiff.

In the present case, we are not concerned with the legal questions discussed by Mr. Justice Field in the case above referred to, as to what facts and circumstances were sufficient legally to constitute a nuisance, or what defenses could be maintained against a charge of the same, but merely with the question, whether sufficient evidence had been adduced by the plaintiff, as to one branch of the negligence charged, to justify the jury in finding a verdict against the defendant, and the only question before us is, whether the learned judge of the court below properly exercised his judicial discretion in deciding that the evidence was not sufficient for that purpose.

We think the learned judge of the court below has made no mistake in this exercise of his judicial discretion, and the judgment below is therefore affirmed.

BRADFORD, District Judge, dissents.