## GAYNOR v. ATLANTIC GREYHOUND CORPORATION.

### Civ. No. 7114.

United States District Court
E. D. Pennsylvania.
Sept. 30, 1949.

See also D.C., 8 F.R.D. 302.

Wilfred R. Lorry (of Freedman, Landy & Lorry), Philadelphia, Pa., for plaintiff.

John J. McDevitt, 3rd, Philadelphia, Pa., for defendant.

WATSON, Chief Judge.

This is a suit for damages for personal injuries sustained by the plaintiff who was struck on a highway in South Carolina by a truck when standing near a disabled bus of the defendant. Plaintiff contends the truck was caused to strike him because of the negligence of the driver of defendant's disabled bus in failing to comply with the South Carolina Motor Carrier Safety Regulations by placing flares and keeping lights from shining across the road into the face of oncoming traffic. The case was tried for the second time before the Court and a jury. The jury returned a verdict in favor of the plaintiff in the sum of $20,000.

The case is now before the Court on a Motion by defendant for an order setting aside the verdict and judgment and for entry of judgment in accordance with motion for directed verdict, and in the alternative for a new trial. At the oral argument, and in his briefs, counsel for the defendant did not press the motion for entry of judgment, but the motion was not withdrawn.

Defendant contends first, in support of its motions, that the verdict was against the weight of the evidence. The proper rule for the Court's action on motions based on such reasons is stated in Aetna Casualty

& Surety Co. v. Yeatts, 4 Cir., 1941, 122 F.2d 350, 354: "Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice."

■ In the present case there was substantial evidence in support of plaintiff's allegations of negligence of the defendant. Plaintiff alleged that the defendant's bus driver violated certain provisions of the Motor Carrier Safety Regulations of South Carolina, where the accident occurred, and that these violations were negligence which caused the injuries sustained by the plaintiff. The plaintiff himself and two other witnesses, the driver of the truck involved in the accident and his wife, testified that the defendant's bus driver, allowed bright lights to shine across the highway into the face of oncoming traffic, and failed to set out the required flares. Another witness, H. M. Tuten, testified that there was a bright light on the bus, just before Murdaugh came along in the truck. This was sufficient evidence from which the jury might properly find defendant negligent. It is the opinion of this Court that the verdict was not contrary to the clear weight of the evidence, nor can the Court find that the verdict was based on evidence which was false. The Court's denial of defendant's motion for a directed verdict was proper.

■ In this case the verdict was not contrary to the clear weight of the evidence, did not result in a miscarriage of justice, and was not so shocking to the judicial conscience that it should be set aside

and a new trial granted. **To** contradict plaintiff's evidence as to the negligence of defendant's bus driver, the defendant called a number of witnesses who testified that, at the time of the accident, the lights on the bus were not shining and that the flares were properly placed on the road before the accident occurred in which the plaintiff was injured. The evidence with reference to the questions of negligence was sharply conflicting. The defendant produced more witnesses who supported its contentions than the plaintiff produced in support of his. It is the function of a jury to reconcile conflicting testimony. Mann v. Funk et al., D.C.M.D.Pa.1943, 50 F.Supp. 305, affirmed 3 Cir., 1944, 141 F.2d 260. These issues were submitted to the jury for that purpose, together with instructions for testing the credibility of witnesses, and in so doing to consider the interest, if any, of each witness. The credibility of witnesses is for the jury, not the Court. Carrano v. Red Star Transit Co., Inc., D.C.W.D.Pa.1943, 58 F.Supp. 643. Further, it is not sufficient ground for a new trial that a verdict is merely against the preponderance of the evidence, but it must be so clearly against the evidence as to compel the conclusion that the verdict is contrary to right and justice. Burris v. American Chicle Co. et al., D.C., E.D.N.Y.1940, 33 F.Supp. 104, affirmed 2 Cir., 1941, 120 F.2d 218.

■ Defendant also contends that a new trial should be granted, for the reason that the verdict of $20,000 was capricious and grossly excesssive. Uncontradicted evidence showed that, as a result of this accident, plaintiff sustained a serious fracture of his leg. This evidence disclosed a long period of painful treatment and loss of earning power in the past, and probably in the future. Under these circumstances, the verdict is not so capricious or grossly excessive as to demand a retrial.

The defendant further contends in support of its motions that the Court erred in refusing defendant's points for charge numbered 4, 5, and 9. These points refer to the legal effect of the negligence of an intervening agency; in this case, the acts of W. H. Murdaugh, driver of the truck

which struck the plaintiff. Defendant also lists as reasons in support of its motions that the Court erred in charging the jury on proximate cause and in failing to charge as to direct and remote cause, intervening and superseding cause, or as to the possible negligence of W. H. Murdaugh breaking the causal connection between any negligence of the defendant and plaintiff's injury.

Even if defendant's points for charge numbered 4, 5 and 9 set forth a correct statement of the applicable South Carolina law on the subject of intervening cause, the points were properly refused in this case. There was no evidence in the case relating to any negligence or wrongful act on the part of W. H. Murdaugh, except the fact that the accident happened. Where there is not sufficient evidence to support a verdict on an alleged defense, the Court should withdraw the defense from the jury. Bunting v. Pennsylvania R. Co., 3 Cir., 1913, 203 F. 193; Kleinschmit v. Farmers Mut. Hail Ins. Ass'n of Iowa, 8 Cir., 1939, 101 F.2d 987. For this reason, defendant's points for charge numbered 4, 5 and 9 were properly refused, and the charge of the Court, insofar as it mentioned proximate cause or omitted to mention intervening cause, was proper.

Defendant also contends that the Court erred in sustaining an objection to an offer of defendant to submit in evidence a document entitled "War Shipping Administration, Report of Medical Examination of Merchant Seaman Prior to Signing on for a Voyage." This was a report of a medical examination of Isaac Gaynor, the plaintiff, made on December 5, 1944, about a year prior to the accident and signed by an unidentified examining medical officer. Under a section of the report entitled, "Notes, remarks, etc., regarding examination: Also dates and salient facts of re-examination made within a year.", the following entry appears in handwriting: "3/30/45. Requested release from service because of backache. X-ray (an undecipherable phrase). Release not recommended. (An undecipherable signature or initials)".

Plaintiff objected to the admission of this document, for the reasons that it was hearsay not admissible as an exception under the Federal Shop Book Rule; that it was improper impeachment to attempt to impeach irrelevant and immaterial facts; and that it was irrelevant. The defendant contends the document was proper to impeach the following testimony of Gaynor on cross-examination:

"By Mr. McDevitt:

"Q. Did you apply for discharge from the Merchant Marine in March, 1945? A. Oh! No, sir. I went back to the same company after I went to New York, and they paid me off for wrenching my back."

The question presented is, whether this document was admissible as an exception to the hearsay rule under the so-called Federal Shop Book Rule, 28 U.S.C.A. § 1732, which provides, in part, as follows: "In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter."

This report of the medical examination of Gaynor was not a record made for the systematic conduct of the business of the War Shipping Administration. The United States Supreme Court, in Palmer et al. v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 480, 87 L.Ed. 645, 144 A.L.R. 719, stated, inter alia: "the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act. * * * If the Act is to be extended to apply not only to a 'regular course' of a business but also to any 'regular course' of conduct which may have some relationship to business, Congress not this Court must extend it." The United States Court of Appeals for the District of Columbia, in New York Life Ins. Co. v. Taylor, 1944, 79 U.S.App.

D.C. 66, 147 F.2d 297, 301, after citing Palmer v. Hoffman, supra, found the rule of the trial court in excluding certain hospital records proper, and stated, inter alia: "To admit a narrative report of an event, or a conversation, or a diagnosis, as a substitute for oral testimony, is to give any large organization the right to use self-serving statements without the important test of cross-examination." After a rehearing on this question, that Court continued: "Hospital records are no different from any other kind of records kept in the regular course of business. * * * Regularly recorded facts as to the patient's condition or treatment on which the observations of competent physicians would not differ are of the same character as records of sales or payrolls."

Defendant relies on the case of Commonwealth v. Harris, 1945, 351 Pa. 325, 41 A.2d 688, in which Chief Justice Maxey, of the Pennsylvania Supreme Court, gives the following example of a proper application of a similar Pennsylvania Shop Book Rule, 28 P.S. § 91b: where a patient came to a hospital for medical attention and, in giving the history of his case to the physician. stated that he had suffered from a heart condition, and the physician in the regular course of business noted that fact on the hospital record, such record would be admissible at the trial of an issue as to whether the patient, in applying for life insurance and stating he had never had any illness, had made a fraudulent misrepresentation. This example was not necessary to a decision of that case. It gives to the Pennsylvania Shop Book Rule a wider scope in admitting documentary evidence than that given to the Federal Shop Book Rule in Palmer et al. v. Hoffman and New York Life Insurance Co. v. Taylor, supra. The report in the present case was not made by a hospital but by the War Shipping Administration, and it is the opinion of this Court that the present report is more closely analogous to those excluded in Palmer et al. v. Hoffman and New York Life Insurance Co. v. Taylor, supra, than it is to that approved in the dictum in Commonwealth v. Harris, supra. The admission of this report would not have changed the de-

fendant's position materially, nor would it have tended to show a decrease in plaintiff's earning power, because there was uncontradicted evidence that, after the date of the entry referred to in the report and up to the time of the accident giving rise to this litigation, the plaintiff continued his same employment as a merchant seaman at the same rate of compensation. If the exclusion of this report was improper for technical reasons, it was not harmful or prejudicial to the defendant.

Defendant also contends the Court erred in excluding certain testimony of T. B. Stevenson, who is and was at the time of this accident the Superintendent of the Esdorn Hospital, which is the hospital where the plaintiff was taken after the accident. The defendant offered to prove by this witness that W. H. Murdaugh, driver of the truck, paid plaintiff's hospital bill and was given receipt therefor by this witness. Such receipt was also offered in evidence and excluded on plaintiff's objection. Counsel for defendant stated that the offer was made for the limited purpose of impeaching the testimony of W. H. Murdaugh as "to a state of facts which he (Murdaugh) believes places responsibility—or he testified to a state of facts placing responsibility for the accident on the bus driver by saying that the bus was left standing facing out toward the highway with the spotlight and bright headlights, which blinded him." Obviously, the proposed testimony of Stevenson and the receipt were not proper to impeach such testimony of Murdaugh, because they were not contradictory to it, and were not relevant for any other purpose. They were properly excluded.

Defendant also contends that the Court erred in excluding certain other testimony and offered testimony. The first was an offer of the defendant to show by Etta Musselwhite that Mrs. Murdaugh had made a statement that she told her husband before he left home to let some one else drive the truck because he was too drunk to drive; that she saw him when he was going to run into the side of the bus, or when she thought he was going to run into the side of the bus; that she saw how

he was driving, and that she knew he was drunk. The second was the testimony of Fred A. Crowell, driver of the defendant's bus, who, in referring to W. H. Murdaugh, said: "I smelt alcohol on his breath." The third was part of a deposition of J. M. Padgett, in which he said, in referring to W. H. Murdaugh, "He had some strong drink on his breath, it was definitely whiskey."

As to the Musselwhite offer, the defendant contends this testimony was admissible to impeach the whole of the testimony of plaintiff's witnesses, including the Murdaughs, who testified that Murdaugh was driving in a normal manner. Defendant contends that he should have been permitted to ask Mrs. Murdaugh on cross examination whether or not she had made a statement that her husband had been drinking in order to lay the ground for contradicting her answer with the testimony of Etta Musselwhite. Defendant contends the testimony is admissible to impeach even if it is an opinion. Defendant finally contends that this proposed testimony was admissible under the res gestæ exception to the hearsay rule, because Mrs. Murdaugh made the statement soon after the accident while still very excited from the accident.

 Clearly an opinion by one that another "was too drunk to drive" does not properly impeach testimony that such other person was driving in a normal manner, because it is not necessarily contradictory, and so the defendant's contention that the Musselwhite offer was admissible to impeach the whole of the testimony of plaintiff's witnesses who testified that Murdaugh was driving in a normal manner must fail. Also, the cross examination of Mrs. Murdaugh as to whether or not she had made a statement that her husband had been drinking prior to the accident was properly excluded. "But ground for contradicting the witness cannot be laid by cross-examining him on irrelevant or collateral matters, * * * otherwise the investigation might branch out into any number of collateral issues on the mere question of credibility. The test of materiality of a fact brought out on cross-examination is whether the party cross-examining would be entitled to prove it as a part of his own case." Henry, Pennsylvania Trial Evidence, Sec. 470, citing In re Ray's Estate, 1931, 304 Pa. 421, 156 A. 64, 79 A.L.R. 772. In the present case, there was no proper evidence offered at any time during the trial by the defendant to show Murdaugh was driving negligently because he was drinking or for any other reason. The situation is similar to that in Becker v. Saylor, 1935, 317 Pa. 573, 177 A. 804, 805, in which the Pennsylvania Supreme Court stated, inter alia: "The complaints about not being permitted to cross-examine a doctor who attended the deceased shortly after he was injured as to a smell of alcohol on his breath, or its presence in his urine, do not appeal to our sense of fairness. The cross-examination was for the purpose of insinuating that the deceased was intoxicated, without proof or offer of proof that he was. Even if he had been, that fact in itself would not have convicted him of contributory negligence." Defendant relies strongly on the case of Harrah v. Montour Railroad Company, 1936, 321 Pa. 526, 184 A. 666, in which a doctor called by the defendant was permitted to testify that plaintiff's son had told him that both he and his father had been drinking prior to the accident giving rise to the suit. The situation in that case was different from the one presented here. In the Harrah case, previously in the plaintiff's own case the son had denied that either he or his father had been using liquor and, therefore, his statement to the doctor was admitted for the purpose of contradiction, although it was incompetent to establish the truth of the facts therein stated. In the present case, neither of the Murdaughs had made any statement previously about drinking, and so there was nothing to contradict.

 Further, it is the opinion of this Court that the alleged statement of Mrs. Murdaugh, referred to in the Musselwhite offer, was not within the res gestæ exception to the hearsay rule. There were not sufficient facts to show that this was part of the res gestæ, and the burden of establishing such facts rests on him who

offers such declaration. Allen v. Mack, 1942, 345 Pa. 407, 28 A.2d 783. If sufficient facts had been established to bring the statement within the res gestæ exception, it was not admissible because it was merely an opinion of an existing condition prior to the accident, which is not admissible even as part of the res gestæ. Hitchman v. H. S. Kerbaugh, Inc., 1914, 242 Pa. 582, 89 A. 669.

As to the excluded testimony of Crowell and Padgett, the defendant contends these were admissible to impeach Murdaugh. There was no testimony that Murdaugh had not been drinking to be contradicted, nor was the smelling of alcohol on Murdaugh's breath the proper type of testimony to impeach the fact that Murdaugh had been driving in a normal manner because it was not contradictory. The excluded testimony of Crowell and Padgett was an attempt to contradict a fact not established in the case. If these were not proper as impeachment evidence, the defendant concedes in his brief that the smell of alcohol on the human breath, standing alone, is not sufficient to prove intoxication or reckless driving. As the Pennsylvania Supreme Court stated, in Critzer et ux. v. Donovan et al., 1927, 289 Pa. 381, 137 A. 665, 666: "Standing alone, the odor of liquor does not prove, nor is it evidence of, intoxication; joined with other facts it may become so." In the present case, there were no other facts presented as to Murdaugh's drinking, and the opinions of Crowell and Padgett that they "smelt alcohol on his breath" and "it was definitely whiskey" were properly excluded.

At the oral argument and in his brief the defendant raised the contention that the Court's remark in telling the jury to disregard the testimony of Crowell that he smelled alcohol on Murdaugh's breath actually excluded Crowell's whole answer in which that phrase was contained. That answer in its entirety and the Court's ruling was as follows:

"A. I asked Murdaugh what caused him to come across the road into the crowd of colored people, and he said he didn't know, and at the time I had the conversation with him I smelt alcohol on his breath.

"Mr. Lorry: I object to that if your Honor please.

"The Court: Well, I think we will have to tell the jury to disregard that."

The Court understood that it was excluding only the last phrase of the answer of Crowell, since only that was objected to and was inadmissible, and at the time it was clear that the lawyers and the jury understood the same. If counsel for defendant thought at that time that the Court's ruling was ambiguous or confusing to the jury, he should have called it to the Court's attention and the ruling would have been fully explained. It is not now felt that the remark so misled the jury as to be cause for the granting of a new trial.

The defendant also requests a new trial on the grounds that there was harmful error in retiring the jury for further deliberation, in the comments made by the Court in so retiring the jury, and in the Court's over-emphasizing the importance of an agreed verdict in so retiring the jury.

The jury originally retired to deliberate in this case about 11:00 a. m. on the morning of March 1, 1949. Between 4:50 p. m. and 5:00 p. m. of the same day the jury returned and handed a paper to the Court which read, "The jury cannot reach a unanimous decision due to lack of decisive evidence." The following excerpt from the official transcript includes the comments made at the time of the jury's return which are now objected to:

"The Court: Do you think that further deliberation will assist you to arrive at a unanimous decision?

"Juror No. 11: I feel we should further deliberate.

"The Court: You do?

"Juror No. 11: Yes.

"The Court: Anyone else?

"Juror No. 6: I think so, too.

"The Court: You think so, too?

"Juror No. 6: Yes, sir.

"The Court: I think they should deliberate further.

"Mr. Lorry: I think they should be given every opportunity, sir.

"The Court: Now, Members of the Jury: I am going to ask you to deliberate further on this, and see if you cannot arrive at a unanimous decision. If you cannot decide this, what jury can? I do not know. You are certainly as competent as any jury that could be called to try this case, and I think possibly more so than most, and you ought to try to do it. Now, you may retire again to the jury room, and when you arrive at a verdict, as I hope you will, you may put your verdict in an envelope and seal it and give it to your foreman.

"Now, the foreman if he cares—perhaps not to take it home with him—may deliver it to the Clerk who will be available at that time, and he will keep it until tomorrow, and you will return here at 10 o'clock in the morning and deliver the verdict to the Court."

\* \* \* \* \* \*

"Well, Members of the Jury; I think you ought to deliberate some more before we determine we have to try the case over again. So you are now asked to go to your room and continue your deliberations."

The jury retired and delivered a sealed verdict to the Clerk about 6:30 p. m. that same evening.

The defendant now contends that these remarks over-emphasized the importance of this jury's agreeing to a verdict and tended to coerce the jury into reaching a decision. The test for the propriety of such remarks is whether they in fact attempt to assist the jury or to coerce them. "If it is an attempt to break down the individual judgment and honest conviction of a juryman in order merely to reach a verdict, it is erroneous; but if it is an admonition or request to the jury to reason together, to consider one another's views, and attempt to reach a conclusion, it is entirely proper." Hill

et al. v. Wabash Ry. Co., 8 Cir., 1924, 1 F.2d 626, 632. And mere refusal to discharge a jury on its own request is not coercion. Hinman v. Hinman, 1925, 283 Pa. 29, 128 A. 654.

The instructions given here were in fact only a recital of the jury's duty to decide the case if they could conscientiously do so. They were given in aid of the jury's function, not in abridgment of it. Similar instructions were approved by the United States Supreme Court as long ago as 1896 in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, and have continued to receive approval in many jurisdictions in both civil and criminal cases to the present time. In the recent case of U.S. v. Samuel Dunkel & Co., 1949, 173 F.2d 506, 508, the United States Court of Appeals for the Second Circuit again approved instructions similar to those in Allen v. United States, supra, and further stated: "A hung jury is certainly undesirable in the administration of justice, and it is proper for the court to point out the specific disadvantages of a new trial in the case before it." This was the second trial of the case. Both trials were long and costly to all the parties involved. The jury reported inability to reach a unanimous decision after only about five hours of deliberation, and two jurors stated that they felt further deliberation would assist in arriving at a unanimous decision. The comments of this Court, in retiring the jury for further deliberation, did not coerce the jury into reaching a decision, nor were they in any way prejudicial or harmful to the defendant.

It is the conclusion of this Court that the record shows no error in the trial which was prejudicial to the defendant. The questions of negligence, causal connection and damages were properly left to the jury after an adequate charge by the Court. The verdict was supported by legal evidence, and the defendant has failed to advance any valid reasons why a new trial should be granted.